[No. 13647. *En Banc.* January 9, 1918.]

MARY JANE VANHORN *et al., Respondents,* v. HENRY R. NESTOSS *et al., Appellants.*[1]

GUARDIAN AND WARD—APPOINTMENT—CONDITION PRECEDENT—BOND. The giving of a bond is a condition precedent to the appointment of a guardian, in view of Rem. Code, §§ 1632, 1633, 1395 and 1449, requiring a bond of guardians, executors and administrators, and providing that the provisions relating to executors shall be applicable to guardians.

SAME—SALE—SALES BY GUARDIAN — VALIDITY — FAILURE TO GIVE BOND. A guardian's sale of real estate is void where the guardian failed to give a bond as a condition precedent to his appointment, as the same is a jurisdictional defect.

SAME. The invalidity of a guardian's sale by reason of the failure of the guardian to give a bond is not a defect that is cured by Rem. Code, § 1693, providing that the sale shall not be avoided by reason of any "irregularity," as it is a jurisdictional defect, the statute providing that the giving of an additional bond when required is jurisdictional.

SAME—SALE—ACTION TO SET ASIDE. An action specifically attacking a guardian's sale as illegal and void because the court was without jurisdiction to order the sale, the guardian having failed to give any bond, is a proper attack upon the sale and confirmation thereof, and it is immaterial whether it constituted a direct or collateral attack.

SAME—SALE—VALIDITY—NOTICE. A purchaser at a guardian's sale of real estate is charged with notice of the fact that the guardian had failed to give any bond.

[1]Reported in 169 Pac. 807.

SAME—SALE—DEFECTS—STATUTES—RETROACTIVE EFFECT. The probate code, Laws 1917, p. 704, § 215, providing that no guardian's sale shall be void or set aside because of any irregularity and that the confirmation shall be conclusive as to the legality of the sale, is not to be given a retroactive effect so as to cure jurisdictional defects in a sale made prior to the passage of the act; and §§ 222 and 223 of the act relating to past and future sales clearly indicating that it is not to be given such retroactive effect.

FULLERTON, J., dissents.

PARKER and MOUNT, JJ., dissent in part.

Appeal from a judgment of the superior court for Lincoln county, Sullivan, J., entered June 10, 1916, granting a new trial, after a judgment rendered in favor of the defendants upon findings of the court, in an action for equitable relief. Reversed.

*Freece & Pettijohn*, for appellants.

*W. A. Wilson* and *F. H. McDermont*, for respondents.

MAIN, J.—The plaintiffs in this case are minors, and bring the action by their guardian *ad litem* for the purpose of having a sale of real estate in a guardianship proceeding declared illegal and void, and for the purpose of establishing their title to such real estate, the right to the possession thereof, and for the rents and profits. The property was sold through a guardianship proceeding and purchased by the defendants. The complaint attacks this proceeding as void because the probate court had no jurisdiction over the estate of the wards at the time the property was ordered sold and the sale confirmed. The cause was tried to the court without a jury. Findings of fact and conclusions of law were entered sustaining the title of the defendants. Thereafter a motion for a new trial was made, supported by an affidavit which tended to show failure to publish notice of the sale as required by the order directing the sale. Upon further consideration of the case, the trial court entered judgment granting the motion for a new trial. From this judgment, the defendants appeal.

The facts are these: On June 17, 1900, Isaac L. Vanhorn the father of the respondents, died, having devised to the respondents an undivided half interest in the quarter section of land here in controversy. On the 2d day of July, 1900, the last will and testament of the deceased was duly admitted to probate. On the 30th day of August, 1902, an order was made by the superior court distributing an undivided half interest in the property here in controversy to the respondents. When Isaac L. Vanhorn died, he left surviving him his wife, Christina Annie Vanhorn, and two minor children, Mary J. Vanhorn and Elizabeth A. Vanhorn. A son, Isaac L. Vanhorn, was born on the 7th day of October, 1900, a few months after his father's death. On November 14, 1902, Christina A. Vanhorn petitioned the superior court for Lincoln county to be appointed guardian of her three minor children, and on the same day, an order making the appointment was entered. There was no provision in the order requiring a bond or fixing the amount thereof. In the petition for the appointment of a guardian it was asked that such appointment be made "without bonds." The order making the appointment was upon a printed form, and through that portion of the printed matter which was to be filled in, covering the giving of the bond and the amount thereof, pen lines were drawn.

On July 21, 1909, the guardian petitioned the superior court to sell the real estate owned by the minors. On July 26th, an order was entered directing the sale. On February 16, 1910, an order was entered confirming the sale, which had taken place prior thereto and on the date fixed in the order directing the sale. At this sale the interest of the minors in the quarter section of land which had been devised to them by their father was purchased by the appellants. At the same time, by private arrangement, the mother's half interest in the same property was purchased by the same parties. The money received from the children's half interest in the land, together with the money which the mother re-

ceived for her half interest, was invested in a half section of land nearby, heavily incumbered by a mortgage. Approximately a year thereafter, this half section of land was sold and netted to the mother and children the sum of approximately two thousand dollars, one-half of which would belong to the mother and the other half to the children. The evidence shows that no part of the children's money was either subsequently invested for them or applied to their education, support, or payment of their just debts.

The complaint in this action attacks the sale in the guardianship proceeding as illegal and void because, among other things, the court acquired no jurisdiction of the wards' estate because the guardian had given no bond. The first bond given by the guardian was on the 13th day of March, 1914, and long subsequent to the sale under the guardianship proceeding through which the appellants claim title.

The first question is whether the giving of a bond by a guardian is a condition precedent to the right to act as such. In other words, if the guardian fails to give bond, does the court acquire any jurisdiction over the wards' estate? It is a general requirement of statutes providing for the appointment of guardians that the appointee shall give bond for the faithful execution of his trust, and, under such statutes, it is generally held that an act done without or before giving such bond is a nullity. In 12 R. C. L., at page 1116, it is said:

"It is a universal requirement of the statutes providing for the judicial appointment of guardians that the appointee should give bond, in a sum fixed by the court and with surety acceptable to it, for the due execution of his trust. And it is usually held that the giving of such bond, the 'qualification' of the guardian as it is called, is a condition precedent to the vesting of his authority; and that any act done without or before the giving of such bond is a nullity."

In Woerner on The American Law of Guardianship, at § 38, page 120, relative to the requirement that a guardian must give bond before he can act as such, it is said:

"The giving of the bond is generally held to be a prerequisite to the validity of the appointment, unless the statute authorizes the appointment without bond, and unless such is the case, no act of a guardian not having given bond is valid; . . ."

The statutes of this state requiring a bond of the guardian, in effect at the time the sale here in question took place, are found in Rem. Code. Section 1632 of this code provides:

"The court shall take of each guardian appointed under this act a bond, with approved security payable to the state of Washington, in the sum of not less than twice the value of the personal property and twice the estimated value of the annual rents, profits and issues of the real property belonging to the estate, conditioned as follows: . . ."

Then follows the condition which the bond shall contain. Section 1633 provides that:

"All the provisions of chapter eight of this title relative to bonds given by executors and administrators shall apply to bonds taken of guardians."

By this section the statutory requirement relative to bonds given by executors and administrators is made to apply to bonds given by guardians.

Section 1395, as to executors and administrators, requires that:

"Every person to whom letters testamentary or of administration are directed to issue must, before receiving them, execute a bond to the state of Washington, with two or more sufficient sureties, to be approved by the judge. . . ."

Section 1449 requires that:

"Every executor or administrator shall, after having qualified, by giving bond as hereinbefore provided, have a right to the immediate possession of all the real as well as personal estate of the deceased, . . ."

The statutes requiring a guardian to give bond are designed to protect the ward's estate. Reading § 1632, which requires that the court shall take of each guardian a bond,

in connection with §§ 1395 and 1449, which are made by statutory reference to apply to guardians as well as executors and administrators, it is plain that the legislature manifested an intention that the giving of a bond was a condition precedent to the right of the guardian to act. In other words, the guardian cannot qualify as such without the giving of such bond.

These same statutes were under consideration by the Federal court of appeals for the ninth circuit in *Hatch v. Ferguson*, 68 Fed. 43, 33 L. R. A. 759, and a like conclusion was there reached. In that case, land of the wards had been sold in a proceeding in which a so-called guardian was acting as such, but who at no time had given the bond required by the statute. The court there, after reviewing the authorities, used this language:

"Considering the language of the Washington statute, and the purpose which was intended to be subserved by the provision requiring a bond of the guardian before he should assume the duties of his office, we think it the better doctrine to hold that the statute is mandatory, and that the execution of a bond is made the necessary prerequisite to the appointment of a guardian. It was evidently contemplated that in the creation of guardianships two steps, equally indispensable, should be taken: First, the appointment; second, the giving of the requisite security by the guardian so nominated,—and that the appointment without the bond, and the bond without the appointment, would be equally impotent to create the official relationship of guardian and ward. It is not the policy of the statute to extend to the purchaser at a guardian's sale the protection which in many instances is accorded to the innocent purchaser. The protection of the minor is deemed of the first importance. It is intended that the purchaser of the minor's property shall be placed upon inquiry to ascertain that the antecedent steps have been taken in accordance with the law. It is within the power of all to know whether the person who assumes to act as guardian is in fact clothed with the powers of that office. An inspection of the record in this case would have shown that Ferguson could not lawfully represent the Hatch heirs with-

out first giving a bond, and that he had wholly failed to comply with the law in that regard. Notwithstanding the judgment of the probate court appointing the guardian, and the judgment of the superior court decreeing and confirming the sale, his acts are void, and may be so declared in any court having jurisdiction of the subject-matter and the parties to the suit. To hold that such defects may be taken advantage of only in direct proceedings is to afford but little protection to the ward whose property is being administered. The circumstances which attend and induce the sale continue in most instances until the ward reaches his majority and the guardian is discharged. Until that time it is obvious that the ward has rarely the opportunity to reclaim his property or protect his rights. The evils which it is the policy of the statute to obviate are real, and their existence is aptly illustrated in the case before the court, since it appears from the record that Ferguson, who acted as guardian, but who failed to give the bond required by law, has appropriated to his own use all of the children's money which he received as the proceeds of the sale of their land, and has wholly failed to account therefor."

It is no doubt true that there are a few cases holding that the failure to give a bond by the guardian is not a jurisdictional defect, but the great weight of authority and, as we think, the better reason, is to the effect that a failure to give the bond is a jurisdictional defect, and that a sale of real estate in a guardianship proceeding where no bond has been given is illegal and void. It would serve no useful purpose to review the many cases upon this question, as each must depend to a large extent upon the language of the statute before the court in the particular case. The statutes in this state, in requiring a guardian's bond, are mandatory. The giving of the bond was essential to the qualification of the guardian, and without such bond the court had no jurisdiction over the wards' estate.

The question then arises whether the failure to give the bond is a defect which comes within the curative statute as found in Rem. Code, § 1693, which provides that:

"In case of an action relating to any estate sold by
. . . (a) guardian . . . in which the ward . . .
shall contest the validity of the sale, it shall not be voided
on account of any irregularity in the proceedings: Pro-
vided, it appears,—

"(1) That the . . . guardian was ordered to make
the sale by the probate or superior court having jurisdiction
of the estate;

"(2) That he gave a bond which was approved by the
probate or superior judge, in case a bond was required upon
granting the order;

"(3) That he gave notice of the time and place of sale,
as in the order and by law prescribed; and

"(4) That the premises were sold accordingly, by public
auction, and the sale confirmed by the court, and that they
are held by one who purchased them in good faith."

It will be noticed that, by this statute, a sale by a guardian
shall not be void on account of any irregularity in the pro-
ceeding, providing it appears, as recited in the first sub-
division, that the guardian was ordered to make the sale by
the probate or superior court "having jurisdiction of the
estate." The bond being essential to jurisdiction, the cura-
tive statute does not apply to the present action. Under the
language of the first subdivision, the statute does not cure
defects unless the guardian was ordered to make the sale by
a court "having jurisdiction of the estate." Neither would
it apply under subdivision 2, if the court, at the time of
ordering the sale, had required an additional bond and the
sale had been made by the guardian without the giving of
such bond. If the failure to give bond required by this second
subdivision was not a curable defect, obviously it was not the
intention of the legislature to bring within the statute a
defect caused by the failure of the guardian to qualify by
the giving of a bond.

Two other questions remain for consideration: First, did
the respondents, in their complaint, properly attack the
guardianship sale and the order of confirmation; and second,
was the purchaser at the sale charged with notice which an

investigation of the guardianship proceedings would have disclosed? These questions are both answered in the affirmative by the case of *Dormitzer v. German Savings & Loan Soc.*, 23 Wash. 132, 62 Pac. 862.

In that case the plaintiffs, during their minority, inherited a half interest in certain real estate in the city of Spokane. The father caused a brother of his and an uncle of the children to be appointed their guardian. Thereafter the property was sold and was purchased by the father. After the purchase was made, the father executed a mortgage to the guardian for the purchase price, which mortgage was subsequently released. Thereafter the father mortgaged the property to the German Savings & Loan Society for a large sum of money. The action was begun by the plaintiffs for the purpose of having the release of the mortgage by the guardian set aside, and for general relief. The facts as pleaded in the complaint showed that the sale through the guardianship proceedings to the father was fraudulent and void. It was there held that the plaintiffs would be reestablished in their title, unincumbered, and that the deed by the guardian to the father was fraudulent and void. It was also held that the German Savings & Loan Society was charged with notice of what the guardianship proceedings would show, and that that society took its mortgage charged with knowledge that the sale to the father was fraudulent and void. In the present case, the respondents specifically attack the guardianship sale as illegal and void because the court was without jurisdiction to order the sale. It is true that they ask for possession and for an accounting, but the gravamen of the charge was the illegality of the sale. Every other relief which they claimed was essentially conditioned upon whether the sale was invalid. If the sale was invalid, the other relief, such as possession and accounting, follows as a matter of course. If the sale was not invalid, under no circumstances could they have any of the other relief prayed for.

There is much argument in the briefs over whether the

attack upon the guardianship sale and the order of confirmation thereof was a direct or a collateral attack. It is unnecessary here to follow the various expressions of the courts—sometimes inconsistent as to what constitutes a direct and what a collateral attack. The right to attack the sale in the manner in which it is done in this case is sustained by the *Dormitzer* case. It is unnecessary to determine whether the attack is direct or collateral, because the record in the guardianship case shows conclusively that no bond was given and that, therefore, the sale was void. As already stated, the purchaser at the guardianship sale was charged with notice of the defect in the guardianship proceeding.

It is unnecessary to review the order granting the new trial, since the appellants resisted that order and appealed therefrom, and the facts in the record show that the respondents are entitled to prevail regardless of whether upon a retrial there would be shown another defect in the proceeding which would furnish another ground for holding the guardianship sale invalid.

Our attention has been called to § 215 of the probate code, passed at the legislative session for the year 1917 (Laws of 1917, ch. 156, pp. 642, 704, and it is claimed that this statute is applicable to the present case, but we cannot accept this conclusion as correct. The section of the statute referred to does not indicate that it is to be given a retroactive effect which would cure a jurisdictional defect in a guardianship sale of real property made prior to its passage and taking effect. Sections 222 and 223 of the act indicate clearly that it should not be given such a retroactive effect. The former section provides that all probate proceedings heretofore conducted, including sales by guardians made in conformity with the provisions of this act, or any prior law applicable thereto, are declared valid. The sale here in question is neither in accordance with the prior law nor with the probate code. Section 223 expressly provides that § 1693, Rem. Code, which is the curative statute above referred to, is repealed

in so far "as said section is meant to affect sales hereafter to be made under this act. . . ." (Laws 1917, p. 707).

The question as to the amount of the judgment which the respondents would be entitled to for the rents and profits is not argued in the briefs, though during the trial testimony was offered and received upon this issue. Considering this testimony, together with the admissions in the appellants' answer, we are of the opinion that the respondents are entitled to a judgment for $1,009.59, this being the difference between the value of the rents and profits and the taxes paid.

The judgment granting the new trial will be reversed, and the cause remanded with direction to the superior court to enter a judgment quieting the title of the respondents in and to the property demised to them by their father, removing therefrom the cloud caused by the deed given in the guardianship proceeding, and decreeing the right of the respondents to possession in accordance with the law relative to possession by tenants in common, and that they have judgment for $1,009.59.

ELLIS, C. J., CHADWICK, MORRIS, WEBSTER, and HOLCOMB, JJ., concur.

FULLERTON, J., dissents.

PARKER, J. (dissenting)—I am unable to concur in the view entertained by my brethren in the foregoing opinion that the superior court was without jurisdiction because it did not require the guardian to give a bond upon his appointment. The court may have erred in failing to require such bond, and it may have also abused its discretion in failing to require of the guardian a bond upon the granting of the order of sale, but I think these errors did not constitute such irregularities as to prevent the court having jurisdiction over the estate, in view of the provisions of Rem. Code, § 1693, quoted in the opinion.

I therefore dissent.

MOUNT, J., concurs with PARKER, J.