[No. 20660.   Department Two.   January 30, 1928.]

LENA J. BRADLEY *et al., Respondents, v.* LORENA
TRUEDSON MAYHEW *et al., Defendants,* AMERICAN
SURETY COMPANY OF NEW YORK *et al.,*
*Appellants and Cross-Appellants.*[1]

[1] GUARDIAN AND WARD (10-15)—PARTITION (23)—SALES—VALIDITY
—SALE TO GUARDIAN—DEFECTS IN PROCEEDINGS. Where, in parti-
tion proceedings, there was no compliance with Rem. 1915 Code,
§ 1595, providing that the parties may be awarded the just
proportion of the true value of the property, in case the real
estate cannot be divided without prejudice to the owners, and
the whole title was, without any such determination, vested in
the mother and general guardian of minors on payment of a
specified sum, the transaction amounts, under the guise of a
partition, to a sale of the minors' interest to their guardian,
and is in direct violation of Rem. Comp. Stat., § 873, providing
that no guardian of an infant shall be an interested party in
the purchase of any real property being the subject of the
suit, except for the benefit of the infant.

[2] INFANTS (22)—LIMITATION OF ACTIONS (10)—RECOVERY OF REAL
PROPERTY. Title to real estate, vested in the children of the
decedent at the time of his death under Rem. Comp. Stat.,
§ 1366, cannot be divested against their will by lapse of time
short of the ten year statute applicable to title by adverse pos-
session, where, through the nullity of partition proceedings,
they continued as tenants in common with other heirs of the
estate.

[3] GUARDIAN AND WARD (27) — INFANTS (7) — SETTLEMENT — VA-
CATING—ESTOPPEL. Heirs who, on becoming of age, signed an
approval of their guardian's reports, receipting for purported
consideration for the sale of their lands, did not ratify illegal
sales of the land to their guardian, where it appears that they
were woefully ignorant of their rights, had no advice except
from the guardian, and did not know what interest the law
gave them, or whether the settlement related to the real or
personal property.

[4] LIMITATION OF ACTIONS (48)—DISABILITY—INFANCY. An action
by an heir to recover upon her guardian's bond for misap-
propriation of personal property by the guardian, is barred by
Rem. Comp. Stat., § 159, if not commenced within five years
after becoming of age.

[1] Reported in 263 Pac. 741.

[5] GUARDIAN AND WARD (33)—LIABILITIES ON GUARDIAN'S BOND—
DEFENSES. Where a guardian wrongfully took all the property
of her wards to be held as her individual property and charged
herself in the guardianship proceedings with the value of the
interests of the minors, who elected to approve the action as
to the personal property and reject it as to the real estate, the
guardian is estopped to complain of the election; and hence
those voluntarily becoming surety on the guardian's official
bond are equally estopped and are liable for return of the
personalty misappropriated.

[6] SAME (33). Where the surety upon the official bond of a
guardian withdrew before the guardian's failure to account and
at a time when she could have accounted, and another surety
was substituted, the latter only is liable for her misappropria-
tion of funds and failure to account therefor.

[7] GUARDIAN AND WARD (25)—ACCOUNTING—CREDITS. Upon a
guardian's misappropriation of funds of her minor wards, she
is entitled to offset an allowance made by the court in the
guardianship proceedings for their support, where, upon in-
vestigation, it is found to be a just allowance.

Appeals from a judgment of the superior court for
Lincoln county, Webster, J., entered December 29,
1926, in an action to establish the rights of certain
heirs in a decedent's estate. Reversed as to appellant
American Surety Company, and reversed in part as to
appellant Lena J. Bradley; affirmed in all other re-
spects.

*Reba J. Hurn,* for appellant Phoenix Mutual Life
Ins. Co.

*John I. Melville* and *R. M. Dye,* for appellant Ameri-
can Surety Co.

*Post & Russell,* for appellant and respondent Aetna
Casualty & Surety Co.

*Samuel P. Weaver* and *Ross C. Fisher,* for cross-ap-
pellants Truedson *et al.*

*John M. Cannon* and *Cannon & McKevitt,* for re-
spondents Bradley *et al.*

*A. O. Colburn,* for defendant Anderson Mortgage &
Investment Co. *et al.*

FULLERTON, J.—This controversy involves the rights of the respective parties thereto in and to certain real and personal property, formerly the estate of Nels Truedson, deceased. To its understanding, it is necessary to recite, with some detail, the facts which give rise to it.

Nels Truedson died intestate in Lincoln county, in this state, on October 30, 1915. He left as his heirs at law his widow and five children. Two of the children, the plaintiffs, Lena J. Bradley and George A. Truedson, were children of a former wife, and the others Edward McK. Truedson, Nettie F. Truedson and Myrtle M. Truedson, were children of the wife living at the time of his death. All of them were then minors.

The widow was appointed administratrix of the estate, and, in due course, filed her final account as such administratrix in the court in which the proceedings were pending. The account showed that she had paid all of the debts of the estate and the expenses of administration, and that she had remaining in her possession some 468 acres of farm land, and personal property of large value, subject to be partitioned among the heirs of the estate. The court, after due notice, entered a decree approving and confirming the account on February 20, 1917.

At the time of filing her final account, the administratrix filed a petition asking that the estate be partitioned among the heirs. The court, as it was then empowered to do under the existing statutes (Rem. Comp. Stat., §§ 1595, 1596) [P. C. §§ 7543, 9813], appointed commissioners to make the partition. The petition was, in form, that usually employed where a division of the property is sought. It contained no allegation that the property could not be divided without prejudice or inconvenience to the owners; nor did the order, entered by the court appointing the com-

missioners, so indicate. The commissioners, however, concluded that the property could not be so divided, and they thereupon ascertained its true value, finding that the real property was of the value of $13,220, and that the personal property was of the value of $6,-071.19, and set apart the entire property to the widow, "subject, however, to the payment by her, for and on behalf of" each of the minor heirs, the sum of $1,-937.12. On March 12, 1917, the court entered a decree approving and confirming the report.

During the pendency of the foregoing proceedings, the widow was appointed guardian of the persons and of the estates of the minor heirs. On the confirmation of the commissioners' report, she filed in the probate proceedings a receipt, signed by herself as such guardian, showing that she had received from herself as administratrix the sums awarded the minor heirs, and the court thereupon entered a decree closing the estate and discharging the administratrix.

Two guardianship proceedings were instituted. The first involved the persons and estates of the children of Nels Truedson by his first wife; the second that of the children of the guardian. In each of these proceedings the guardian filed inventories, in which she listed as the property of her wards the sums they were entitled to receive as heirs of the estate of their father. These proceedings were wholly paper transactions. No actual funds were transferred, and it appears that the guardian never thereafter had in her possession, as guardian, any money or other property of her wards, other than such an indebtedness due from herself to the estates, as might arise out of the transactions.

On March 14, 1917, the court entered in the guardianship proceedings the following order:

"It is here ordered, adjudged and decreed, that until the further order of this court, the said Lorena Truedson be, and she is hereby authorized, directed and empowered to use the moneys of her said wards and that, for the use of the same, she shall account for and pay over interest thereon at the rate of five per centum per annum, and it is further ordered, adjudged and decreed that the said Lorena Truedson be and she is hereby allowed, out of moneys belonging to the said minors, the sum of thirty dollars per month from and after the 28th day of February, 1917, for the care, maintenance and support of the said minors, until the further order of this court."

A like order was subsequently made in the guardianship proceedings of the other wards.

The ward Lena J. Truedson, herein called Lena J. Bradley, became of legal age on February 16, 1918. On April 8 of that year, the guardian filed in the guardianship proceedings a report to the effect that she had paid the ward, in cash and credits, the full sum due her, and filed therewith a written acknowledgment of the ward, verified before a notary public, acknowledging the receipt of the money. The real transaction, as it developed in the evidence, was that the guardian gave to the ward her promissory note for the sum due, taking it back from her for safekeeping. The other ward involved in these proceedings became of age on February 15, 1919, when a like proceeding was had as to him. Neither of these notes was ever paid. The evidence discloses, however, that, at the time of their execution, the guardian was considered solvent, and that the notes would then have been taken by banking institutions at their face value.

At the time the widow was appointed as guardian of the estate of Lena J. Truedson and George A. Truedson, she filed her bond as such guardian in the sum of $8,000, with the American Surety Company of New York as surety. At the time she was ap-

pointed guardian of the other wards, she filed a like bond in the proceedings in the sum of $12,000, with the same company as surety. On June 8, 1918, the surety served on the guardian and filed in each of the guardianship proceedings a notice of its desire to be released from further liability on its bonds. The usual proceedings were had thereon, resulting in the substitution of the Aetna Casualty & Surety Company as surety, and the discharge of the first named company from further liability.

Of the real property of which Nels Truedson died seized, forty acres thereof was property acquired prior to his marriage with his second wife, and was administered upon as his separate property. Under the statutes of descent of this state, Lorena Truedson, as his surviving widow, was entitled in her own right to one-third thereof. The remainder of the property of his estate, both real and personal, was community property, and of this the widow was entitled to one-half.

On July 20, 1921, the widow, Lorena Truedson, borrowed of the Phoenix Mutual Life Insurance Company the sum of $7,000, to be repaid five years from that time, and executed a mortgage upon practically all of the real property set apart to her by the decree of distribution entered in her deceased husband's estate. The loan was not repaid. She also mortgaged the same property to secure others of her creditors, but as these present no controversy different from that presented by the mortgage of the insurance company named, they need not be further noticed.

In this suit, the heirs, Lena J. Bradley and George A. Truedson, averring that the purported partition of the estate was illegal and void, sought to recover their interests therein. They made parties to the suit all of the other claimants thereto, averring, with

respect to such claimants, that their claims were inferior to and subject to their interests. With respect to the real property, they sought to recover it in specie. With respect to the personal property, they averred that it had been dissipated and lost, and sought to recover its value from Lorena Truedson, as guardian, and the obligors on her several guardianship bonds. The other heirs of the estate, by affirmative pleas, made the same contentions with respect to the partition proceedings, and also sought to recover their specific interests in the real property, and to recover from Lorena Truedson and her several bondsmen the value of their interests in the personal property.

The Phoenix Mutual Life Insurance Company, answering, sought to foreclose its mortgage. It contended that the partition proceedings were valid, and that its mortgage was a lien upon all of the real property; making the alternative contention that, if the partition proceedings were adjudged invalid, it was entitled to a foreclosure, as against the interests of Lorena Truedson and the interests of the plaintiffs in the suit. The bonding companies denied liability on the bonds, and as an alternative contention, in the case that it should be adjudged that there is a liability, dispute between themselves as to which of them must answer for the liability.

The court below, after a trial of the issues, found facts from which it drew the conclusion that the attempted partition proceedings were null and void, and did not divest the then minor heirs of the estate of any rights in the real property thereof which they were entitled to receive as heirs of their father. It found that the value of the personal property of the estate was of the value the commissioners reported it to be, and found that the interests of the heirs there-

in had been misappropriated by Lorena Truedson. It found that the allowance made to Lorena Truedson for the care and maintenance of the heirs during their minority was a reasonable sum to be allowed for such purposes, and concluded that Mrs. Truedson was entitled to deduct this sum from the value of the property misappropriated. It found that there was due Lena J. Bradley, after making the deduction, on account of the misappropriation, the sum of $708.27, and that there was due George A. Truedson the sum of $467.75.

With reference to the other of the minor heirs, it found that the allowance for their maintenance and care more than offset the value of their interests in the personal estate. It found that the mortgage of the Phoenix Mutual Life Insurance Company was a valid and subsisting lien upon the interests of the mortgagor Lorena Truedson in the property described therein only, and concluded that it was entitled to a foreclosure as to such interests. It found facts from which it concluded that the several orders approving the accounts of the guardian in the guardianship proceedings of the estates of Lena J. Bradley and George A. Truedson, and discharging her and her bondsmen from liability therein, were null and void. It found that the receipts Mrs. Truedson gave to herself as administratrix and to herself as guardian did not transfer any of the actual property of the estate from the administration proceedings to the guardianship proceedings, but seem to conclude that it had the effect of a partition of the personal property.

The court entered a decree purporting to be in conformity with its findings and conclusions, and from the decree the Phoenix Mutual Life Insurance Company, the American Surety Company of New York, The Aetna Casualty & Surety Company, and the heirs,

Edward McK. Truedson, Nettie F. Truedson and Myrtle M. Truedson, appeal.

[1] The question common to all of the parties is whether the partition proceedings passed the title to the property of the estate of Nels Truedson to Lorena Truedson. But, while this question is open to the parties, and is ably argued by counsel for the appellant Phoenix Mutual Life Insurance Company, we do not feel that we need notice it at length. The very question was before us in the comparatively recent case of *Larrabee Co. v. Mayhew,* 135 Wash. 214, 237 Pac. 308, where, sitting *En Banc,* we held the proceedings so far invalid as not to accomplish the purpose intended. The reasons for the conclusion are stated in the opinion of the court in that case, and it is sufficient to say now that we adhere to the conclusion there reached.

[2] The statute of limitations is also urged as a bar to the right of the plaintiffs to assert title to the mortgaged property as against the mortgagee. But we think the claim without foundation. Such title as the plaintiffs have in the property vested in them immediately on the death of their father. (Rem. Comp. Stat. § 1366.) While it was subject to be divested without their active consent by a partition proceeding, the proceeding here attempted was a nullity. They continued to hold the property, after the proceedings, by the same right and title that they held it before the attempt. They continued to be tenants in common with the other heirs of the estate. Their title to the property could be divested against their will, only by the statute applicable to title by adverse possession. In this state, the statute of adverse possession is ten years, and this period of time had not elapsed prior to the commencement of their action, even if the date of its starting be considered as the date of the death

of their father. The actual time of its starting was, of course, much later.

[3] The appellant further contends that the plaintiff-heirs are estopped, as against it, from asserting title by reason of the signed and acknowledged admissions made by them to the effect that they had been paid in full for their interests in the property of the estate. But this question was also before us in the case of *Larrabee Co. v. Mayhew,* above cited; and was determined adversely to the contention. There is, however, as the appellant points out, this distinction between the facts of the cases: in the cited case, the mortgage was given to secure an antecedent debt, while in the case before us the mortgage was given to secure an actual loan of money, made at the time of its execution. But an examination of the opinion in the cited case will show that no stress was laid upon the fact that the mortgage was given to secure an antecedent debt. The reasoning upon which the court rested its conclusion was entirely foreign to this thought, and is as applicable to the present case as it was to that one. It is our opinion, therefore, that the difference between the facts of the cases in the respect urged does not justify the application of a different rule. The conclusion follows that there was no error in the judgment with respect to the rights of the appellant now complaining.

Against the appellant sureties, the trial court entered the following judgment:

"That the plaintiff Lena J. Bradley have and recover judgment against the defendant Lorena Truedson and against the defendant American Surety Company of New York, a corporation, in the sum of $708.27, and that the plaintiff George A. Truedson have and recover judgment against the defendant American Surety Company of New York, a corporation, and against the defendant The Aetna Casualty

& Surety Company, a corporation, in the sum of $467.75.''

The court reached this part of its judgment by charging Mrs. Truedson, as guardian, with the value of the shares of the several minor heirs in the personal property of the estate, adding thereto interest at the rate of 6 per cent per annum from the time of her appointment as guardian until the minors severally reached the age of majority, and deducting therefrom the amount of the allowances made for their care and maintenance. It charged the amount found due Lena J. Bradley alone to Mrs. Truedson and the surety, American Surety Company of New York, because this one of the minors became of age prior to the time the surety gave notice of its withdrawal from the guardianship bond; the court evidently concluding that the guardian then owed the duty to account to the ward for her interests, and that the failure so to do was a conversion. But why it charged the amount, found due George A. Truedson, jointly to both sureties on the guardianship bonds, the record offers no explanation.

[4] The bondsmen interposed the plea of the statute of limitations against the right of recovery by either of these wards. As to Lena J. Bradley, we think the plea is well taken. The present action was not commenced until more than five years after she reached the age of majority, and whether the applicable statute be § 158 or § 159 of the code (Rem. Comp. Stat.) [P. C. §§ 7542, 8166], this was too late to permit a recovery of her interests in the personal property of the estate. We have not overlooked the argument, made in her behalf, to the effect that she was not of mature mind and was incapable of understanding the nature of the guardianship proceedings, and the further argument that there was fraud in the

proceedings, and that she did not discover the fraud until a short time before the action was instituted. But we think it unnecessary to notice the arguments in detail. She is not suing here by guardian, but as a person compos mentis. Nor does her evidence, as we read it, betray any lack of understanding. On the contrary, it appears to us that she possessed the mentality of an average person. Nor was there any actual fraud. All of the proceedings had by Mrs. Truedson, with reference to the estate or the guardianship, were had with the express approval of the superior court before whom the probate proceedings were pending, and the errors committed therein, which compel the holding that they were invalid, were mistakes of law.

There is the possible exception of the purported settlement of the guardian with the ward after the wards became of age, but at that time the evidence shows that Mrs. Truedson held intact all of the property of the estate, that there were no encumbrances thereon, and that the obligation she then gave was bankable at its face value. But it is said that the proceedings were constructively fraudulent. It may be that they were so in the sense that any transaction not sanctioned by law is constructively fraudulent, but we cannot conceive that it tolls the statute of limitations.

The statute of limitations is not applicable to George A. Truedson. The action was commenced in time as to him, no matter which of the cited statutes may be deemed applicable.

[5] The bondsmen contend, however, that no property belonging to the ward ever came into the possession of the guardian as such, and in consequence there was no property which she could, as guardian, misappropriate; and that it must follow that there was nothing with which the sureties upon her bond

as guardian can be charged. But plausible as this reasoning may appear, we are not persuaded that it is tenable. Going back to the institution of the guardianship proceedings, it will be remembered that the substance of the transaction then had was this: Mrs. Truedson took, as property to be held in her individual right, all of the property of her deceased husband's estate, that part belonging to the minor heirs as well as that to which she was entitled in her own right, and charged herself as guardian, in the guardianship proceedings, with the value of the interests of the minor heirs. While the proceeding was wrongful, in the sense that it was done without the sanction of law, it was a proceeding which the heirs had the right either to approve or reject, and a proceeding which we think they can reject in part and approve in part. They have rejected it, in so far as the real property of the estate is concerned, but have approved it in so far as it relates to the personal property. Since the heirs had the right of election, the guardian is estopped to complain of the election made, and it must follow that those who voluntarily became surety upon her official bond are equally estopped.

[6] But the judgment for the interests of this particular ward in the personal property is jointly against both of the bondsmen, and, as we have said, there is a dispute between them as to a joint liability, and a dispute as to which of them is liable. It is our conclusion that there is no joint liability, and that, as between the bondsmen, the Aetna Casualty & Surety Company is alone to be held. The guardian could not be charged with a misappropriation of the ward's interests until she failed to account to him for such interests when he reached the age of majority. This was long after the first of the sureties had withdrawn as surety on the guardian's bond, and long after the

second had been substituted in its stead.  It may be, that had there been a showing that the guardian had been unable to account at the time of the withdrawal, a different rule would be applicable, but, as we have noted, she could, at that time, have accounted, had she been forced to do so.  No liability would thus have attached to the first of the bondsmen, had it not been for the intervention of the second, and for this reason the second must bear the loss.

[7]  The appeal of the other heirs is based on the contention that the trial court was in error in permitting an offset of the allowance made for their care and maintenance.  But this allowance was first made by the court before whom the guardianship proceedings were pending, and received the approval of the trial court in the present action, after an independent investigation.  It is our opinion, after an examination of the record on the question, that the allowance is just.

Our conclusions are that the judgment of the trial court should be modified, by disallowing the judgment entered in favor of Lena J. Bradley for her interests in the personal property, and by vacating the judgment entered in favor of George A. Truedson against the American Surety Company of New York, and that in all other respects it should be affirmed. The cause will be remanded to the trial court with instructions to modify the judgment in accordance with these conclusions.

MACKINTOSH, C. J., MAIN, ASKREN, and HOLCOMB, JJ., concur.

[No. 20573.   Department One.   January 31, 1928.]

SEATTLE TITLE TRUST COMPANY, *Respondent,* v. AGNES
C. BEGGS, *Appellant.*[1]

[1] MORTGAGES (142)—DEFAULT IN PAYMENT—ELECTION TO DECLARE
ENTIRE DEBT DUE.  The mortgagee is entitled to claim an ac-
celeration of the whole sum due on a mortgage immediately
on default of any payment of the principal, without waiting
thirty days, under a provision to the effect that, should there
be default for thirty days in the payment of any interest in-
stallment or default for thirty days in the payment of any
taxes or assessments, "*or* should default be made in the payment
of the principal amount accruing" on any note, "then in either
of said events" the whole sum could be declared due and pay-
able.

[2] SAME (124-1)—PARTIAL RELEASE—CONSTRUCTION OF MORTGAGE
PROVISIONS.  Under a provision in a mortgage to the effect that
certain tracts were to be released upon the payment of specified
sums "during the life of this indenture," in which event such
payments are to be credited on the "next maturing notes"
secured by the mortgage, to entitle the mortgagors to such re-
lease, the specified sums must have been paid in advance of the
maturity of the notes given for the principal.

Appeal from a judgment of the superior court for
King county, Griffiths, J., entered December 8, 1926,
upon findings in favor of the plaintiff, in an action to
foreclose a mortgage, tried to the court.   Affirmed.

*John T. Casey* and *George F. Hannan,* for appel-
lants.

*Roberts & Skeel* and *Glen E. Wilson,* for respond-
ent.

PARKER, J.—The plaintiff trust company commenced
this action in the superior court for King county,
seeking foreclosure of a mortgage trust deed, executed
and delivered to it by the defendants Agnes C. Beggs
and her husband to secure payment of a series of

[1]Reported in 263 Pac. 598.

promissory notes executed and delivered to it by them. A trial upon the merits resulted in findings and decree awarding to the trust company foreclosure as prayed for, from which the defendant Agnes C. Beggs alone has appealed to this court.

The controlling facts are not in dispute. They plainly appear as follows: On May 21, 1924, appellant Agnes C. Beggs, with her husband, executed and delivered to respondent trust company a series of one hundred and twenty-five promissory notes, evidencing an aggregate indebtedness of $62,164. Notes Nos. 1 to 124, inclusive, were for the principal sum of $500 each, while note No. 125 was for the principal sum of $164. The principal of each of these notes was payable monthly in their numerical order; note No. 1 maturing December 1, 1924, and all the other notes maturing successively, in numerical order, on the first day of each succeeding month. Interest was payable semi-annually at the rate of seven per cent per annum. On the day of the execution of these notes, to secure their payment, appellant, with her husband, executed and delivered to respondent a mortgage trust deed upon lots 8 and 9, block 17, Union addition to Seattle, subject to a first mortgage of $120,000; lot 8, block 17, Mayfair addition to Seattle, subject to a mortgage of $2,500; and lots 5 and 6, block 6, of Hillman City. The mortgage trust deed contains default provisions reading as follows:

"If default shall be made in the payment of all, or any part, of any installment of the interest hereby secured to be paid, and should the same remain unpaid and in arrears for the space of thirty (30) days after same becomes due, and should any taxes or assessments upon the said mortgaged property, or other charges having priority over the lien of this mortgage, remain in arrears and unpaid for the period of thirty (30) days after same shall become due and payable, or should default be made in the payment of the prin-

cipal amount accruing on any of said notes secured by these presents, then, and in either of said events, the entire principal sum of the notes then outstanding and secured by these presents, together with all accrued interest shall, if the Trustee shall so elect, immediately become due and payable without notice.''

The trial court found appellant and her husband to be in default, in so far as we need here notice facts constituting such default, as follows:

''That Notes numbered One (1) to Seventeen (17) inclusive have been paid.    Note No. Eighteen (18) which became due May 1, 1926, in the principal amount of five hundred dollars ($500), has not been paid, and payment thereof has been refused. . . .    That because of said default in the payment of said principal sum as the same became due, the plaintiff, in accordance with the terms and conditions of said Deed of Trust, and upon the request and instructions of the holders of a majority of said outstanding notes, has elected to and did declare the entire amount of said unpaid notes immediately due and payable.''

This is the particular default relied upon by counsel for respondent as authorizing it to declare the whole of the unpaid indebtedness due and payable, giving it the right to foreclose.   This action was commenced May 27, 1926, which, it will be noticed, was twenty-seven days after the maturity of the unpaid note No. 18 falling due May 1, 1926.

[1]   The principal contention here made in behalf of appellant is that, by a fair construction of the above quoted default provisions of the mortgage trust deed, respondent could not, in any event, acquire the right to declare the whole of the indebtedness due and the right of foreclosure, until such default continued for a full period of thirty days.   The argument is that such thirty-day grace period applies to default in payment of principal as well as to default in payment of interest and taxes.   It seems plain to us that this is

an erroneous view of the meaning of the default provision relating to the payment of the principal of each note at maturity. That default provision is separated from the others by the disjunctive "or," and does not contain any thirty-day grace period as the others do. Counsel invoke the general rule that forfeitures are not favored in law, and that the courts will, if possible, construe a contract so as to avoid forfeiture of rights thereunder; arguing that this default provision is, in effect, a forfeiture provision, and should accordingly be strictly construed in favor of appellant. We do not think it is in any sense a forfeiture or penalty provision. In the text of 19 R. C. L. 493, we read:

"The proposition is accepted without dispute that a stipulation in a mortgage providing that the whole debt secured thereby shall become due and payable upon failure of the mortgagor to pay the interest annually or to comply with any other condition of the mortgage is a legal, valid, and enforceable stipulation, and is not in the nature of a penalty or forfeiture."

This view of accelerating provisions, such as are here in question, is well supported by the decisions. We conclude that it clearly appears that appellant and her husband were in default to the extent of giving to respondent the right to foreclose for the entire unpaid indebtedness.

[2] By the terms of the mortgage trust deed, appellant had the right to a release of the Mayfair lot "by paying to the trustee at any time during the life of this indenture the sum of $3,000;" and also to a release of the Hillman lots "by paying to the trustee $2,000 at any time during the life of this indenture;" the mortgage trust deed further providing in this connection:

"In the event parties of the first part shall make the payments set forth in the foregoing paragraph

for partial release of mortgaged property, or either of said payments, the Trustee will apply the moneys received for such release, or releases, to the payment in regular consecutive order of the next maturing notes secured by these presents.''

It is contended in behalf of appellant that, since, in the payment of the principal of notes Nos. 1 to 17, appellant and her husband have paid upon the principal of the whole indebtedness $8,500, thus having paid on the principal of the whole indebtedness more than the aggregate of $3,000 and $2,000, they are entitled to have the Mayfair and Hillman properties exempt from foreclosure. The payment of this aggregate of $8,500 upon the principal indebtedness was manifestly only the aggregate of payments made from time to time as the principal of the first seventeen notes matured, and not payment of any of the principal in advance. It seems to us that the last above quoted provision of the mortgage trust deed renders it plain that, in order to acquire the right of release of the Mayfair and Hillman properties, it must appear that payments looking to that end were made in advance. So far as can be determined from the record before us, no such payments were made. Hence, we must assume that appellant and her husband have not placed themselves in such a position as to entitle them to a release of the Mayfair and Hillman properties. We are of the opinion, therefore, that the trial court did not err in including these properties in the foreclosure awarded by the decree.

We conclude that the decree of foreclosure must be in all things affirmed. It is so ordered.

TOLMAN, ASKREN, MITCHELL, and FRENCH, JJ., concur.