[No. 22739.   Department Two.   April 10, 1931.]

JESSE MOOD, *Respondent,* v. LOUIS F. MADER *et al.,*
*Appellants.*[1]

[1]Reported in 298 Pac. 329.

84

*Williams & Cornelius,* for appellant Mader.

*Hamblen & Gilbert,* for appellant Metropolitan Life Insurance Co.

*G. E. Lovell* and *C. T. McDonald,* for respondent.

FULLERTON, J.—This is an action of equitable cognizance, brought by the respondent, Jesse Mood, seeking to have confirmed by the court his claim to a one-eighth interest in certain real property. Judgment went in his favor in the court below, and the defendants in the action, Louis F. Mader and The Metropolitan Life Insurance Company, appeal.

The facts are somewhat involved, and require some detail of statement. On and prior to February 6, 1910, one William S. Mood and Sadie Mood, his wife, the father and mother of the respondent Jesse Mood, owned, as a community, certain real property situated in the county of Whitman, of which the interest claimed by the respondent forms a part. On the date given, Sadie Mood died, leaving a will in which she devised to her husband a life estate in her share of the property, with the remainder over to her children; naming in the will the children who were in being at the time the will was executed. The respondent was born after the date of the will, was not named or provided for therein, and as to him the testatrix was, under the statute, deemed to have died intestate.

William S. Mood was appointed executor of the estate, and letters testamentary were issued to him. In the course of the administration, the court, on December 21, 1911, entered a decree of distribution of the property of the estate, wherein, among other things, it awarded to the respondent, as an heir at law of his mother, an undivided one-eighth interest in the real property of which she died seized, subject to certain mortgage liens covering the property executed

prior to the death of his mother. There were other minor heirs who had an interest in the property, subject to the life estate of William S. Mood, and Mood himself had an interest therein as the surviving spouse of the community, in addition to his rights under the will.

On July 9, 1915, Mood began an action in the superior court of the county in which the real property was situated, for a partition of the property. These proceedings were prosecuted to a final decree, which was rendered by the court on December 4, 1915. The court, in its findings of fact on which the decree was based, found that the property could not be actually divided among its respective owners without great prejudice to the owners, and found that a sale of the property was necessary to effectuate a partition. The court therefore appointed a referee to make a sale of the property, and directed that it be sold at public auction, in one body, for cash.

The referee so appointed made a sale as directed; returning to the court that he had, on December 11, 1915, sold the property to William S. Mood, the plaintiff in the action, for the sum of $46,585; and that such sum was the highest and best bid received at the sale for the property. This sale, after notice to the parties interested and a hearing had, was confirmed by the court on December 27, 1915, and, on December 29, 1915, pursuant to the order of the court, the referee executed and delivered to the purchaser a deed to the property.

On November 14, 1915, William S. Mood filed a petition in the court in which the foregoing action was then pending, praying that he be appointed the general guardian of the minor defendants named in the action for partition. On the filing of the petition, the court fixed a time for its hearing, and directed that notice of

the application be given to the minor defendants in the manner required by statute. Such a notice was given, and on December 2, 1915, the time fixed for hearing the application, the application was heard, and an order entered appointing the petitioner as such guardian, subject to the condition that he give a bond to the state of Washington conditioned according to the statute, in the sum of six thousand dollars. The appointee, however, did not immediately furnish the bond or qualify as guardian. The bond was filed on February 15, 1916; and the qualifying oath was subscribed and the letters of guardianship issued on August 4, 1916.

The court, at the time it entered the decree of partition, seems not to have been advised of the status of Mood with relation to the guardianship proceedings. In the decree, the referee appointed to make the sale is directed to pay over to Mood, as the duly appointed guardian of the respondent, the proportionate share of the proceeds of the sale that would inure to the respondent, and elsewhere in the recitals in the decree it seems to be assumed that Mood was the duly qualified guardian of the minors.

On December 21, 1920, William S. Mood brought an action to quiet his title to the property. Numerous parties were made defendants in the action, among whom was the respondent in the present action. He was duly served with process therein. He was then a minor, over the age of fourteen years, and did not appear and apply for the appointment of a guardian within thirty days after such service. The plaintiff in the action thereupon petitioned the court to appoint some suitable and disinterested person as his guardian to represent him in the action, and the court made such an appointment in the person of an attorney of its court.

The record, as it is transmitted to this court, does not show what answer the guardian made to the allegations of the complaint, but it does show that there was a trial of the issues involved, and that, at the conclusion of the trial, the court made findings of fact and conclusions of law on which it based its judgment. The findings of fact are somewhat general, but it was found that the plaintiff in the action was the owner in fee simple of the property, and that the defendants therein were claiming an interest therein adverse to the plaintiff, which claims were without right. As matter of law, it was concluded that the plaintiff was entitled to a decree quieting his title to the property, and a decree was subsequently entered in accordance therewith.

Following the last mentioned decree, William S. Mood mortgaged the entire land to the Netherland-American Mortgage Bank to secure a loan made to him in the sum of forty thousand dollars. The proceeds of this loan were used in part to pay existing mortgages on the land which were liens upon the interests now claimed by the respondent, Jesse Mood. This mortgage was not paid, and the bank foreclosed it, purchased the property under the decree of foreclosure, and obtained a sheriff's deed to the land on September 16, 1926. On October 1, 1926, the bank contracted to sell the property to the appellant Mader for a consideration of $44,534.19, of which sum ten thousand dollars was paid at the time of the execution of the contract. Sometime in August, 1927, Mader borrowed from his co-appellant the sum of $34,500, and with this sum paid the remainder of the purchase price then owing under his contract of purchase, and received a deed to the property. To secure the money borrowed, he mortgaged the land to his co-appellant.

The present action was begun on November 25, 1929.

In his complaint, the respondent, as a part of the relief sought, prayed that the deed from the referee to William S. Mood, executed pursuant to the sale of the land, be set aside in so far as it applied to the interests of the respondent in the property, and that his title to the property be quieted as against such deed. He also prayed that the property be partitioned between himself and the owners of the other interests, and that the appellant Mader be required to account to him for the rents and profits of the property during the time he has been in its possession. The court in its decree found that the respondent was the owner of a one-eighth interest in the land; found that the appellant Mader was the owner of the other seven-eighths interest; found that the property could be partitioned between the owners, and appointed referees to make the partition. It refused to make an accounting between the parties, reserving that question for a "future decision by the court."

The title and interests of the appellants in the real property was derived through William S. Mood, and it is not questioned that they hold such title thereto as Mood at any time possessed. The first of the questions for consideration, therefore, is: Did Mood acquire the interests of the respondent in the property through the partition sale?

The proceedings relating to this sale, we have heretofore outlined. It is sufficient here to say concerning them that the statutes relating to the partition of real property then in force were followed with unusual care. All of the jurisdictional requirements were complied with. No step was taken requiring the sanction of the court without first receiving the approval of the court, and all of the proceedings had under its orders were reported to it and confirmed by it in formal written orders.

But it is said that Mood, because of the statutes, was not competent to purchase the interests of the respondent at the sale, and, because thereof, acquired no title to the property by his purchase.

The statute referred to contains the following provision (Rem. Comp. Stat., § 873):

"Neither of the referees, nor any person for the benefit of either of them, shall be interested in any purchase, nor shall the guardian of an infant be an interested party in the purchase of any real property being the subject of the suit, except for the benefit of the infant. All sales contrary to the provisions of this section shall be void."

This statute, we have held, must be interpreted and given force as it is written. Our holdings have been uniform to the effect that a guardian of an infant cannot become a purchaser of his ward's real property at any judicial sale of the property brought about by himself, and that all such sales are void in so far as the interests of the ward are affected. *Dormitzer v. German Savings & Loan Society*, 23 Wash. 132, 62 Pac. 862; *Larrabee Co. v. Mayhew*, 135 Wash. 214, 237 Pac. 308; *Bradley v. Mayhew*, 146 Wash. 421, 263 Pac. 741. It must follow from this that if Mood, at the time of the sale, was the guardian of the respondent, his purchase did not pass to him the respondent's interest in the property, and he could not, of course, pass title to the interest by any subsequent conveyance of the property.

Turning to the facts relating to the particular question, it will be observed from the dates given that Mood petitioned the court to be appointed guardian prior to the time of the sale of the property, and that a hearing was had on the petition, and an order entered appointing him as such guardian, prior to such time; that the order of appointment required Mood to

give a bond to the state of Washington in the sum of six thousand dollars, conditioned that he would faithfully perform his duties as guardian; that he did not furnish the bond until after the decree in partition was entered, and the property sold pursuant to the decree, and the sale confirmed by the court; and that letters of guardianship were not issued to him even at the time of the filing of the bond, but that these were issued some months later, when Mood took and filed his oath as guardian.

The argument on the part of the appellants is that the proceedings relating to the appointment preceding the filing of the bond and the taking of the oath of office, were provisional and conditional, and that the appointment dates from the issuance of the letters, not from the date the original order was made.

The question here suggested is not entirely new in this court. It was before us in the case of *Vanhorn v. Nestoss,* 99 Wash. 328, 169 Pac. 807. In that case, one Christina A. Vanhorn petitioned for, and was appointed, guardian for her three minor children. There was no provision in the order of appointment requiring a bond, and none was given by the appointee. Thereafter, the guardian petitioned the court for leave to sell the real property of the minors. The petition was granted, and an order of sale entered, under which the property was sold to a disinterested purchaser. Later on, the minors, by a guardian *ad litem,* brought an action to set aside the sale, and to quiet their title to the property. The trial court sustained the title of the purchasers, holding the sale valid. On appeal, this court reversed the holding, and remanded the cause with instructions to enter a judgment in favor of the minor claimants.

There was no question made as to the regularity of the proceedings subsequent to the order appointing

the guardian; the sole question being whether the order vested in the person appointed the rights and powers of a guardian. We held that it did not. In the course of the opinion, we reviewed at length the statutes relating to the appointment and qualification of guardians, and reached the conclusion that a "guardian cannot qualify as such without giving" the bond required by the statute. . The court also reviewed the curative statutes, holding that these were without application, because the bond was "essential to jurisdiction," and the court, being without jurisdiction, could make no valid order of sale. It was noticed also that the guardian had subsequently given a bond as such, but this was not allowed to cure the original defect.

The question presented in the cited case, it is true, is somewhat the counterpart of the question here presented, but we see no reason for differentiating the case in principle from the one before us. Obviously, a change in the situation ought not to effect a change in the rule, and if, in the one instance, the appointment did not take effect until after the filing of the bond, it did not in the other. It must follow from these considerations that William S. Mood was not the legally appointed guardian of the respondent at the time the sale of the respondent's interest in the real property was made, and it must further follow that if his purchase of the property was void, it must be for some reason other than the reason that he was the duly appointed guardian of the respondent at the time of the purchase.

As furnishing such a reason, it is said that the court treated Mood as the guardian of the respondent from and after the entry of the order of appointment, and that neither he nor his successors in interest can be heard to question the validity of the appointment.

But this is the situation in all such instances. Take

92

the cited case as an illustration. There, subsequent to the appointment, the court entertained her petition as guardian to sell the real property of her supposed wards, heard her proofs and found a necessity for a sale of the property, and, by a final judgment, confirmed her acts. Yet it was held that the recognition thus given to the appointment did not validate it. The question was treated as one of jurisdiction, which could not be conferred by recognition, acquiescence, or consent. In other words, the appointment was treated as a nullity, and, manifestly, if it was a nullity in the one instance so it must be in the other.

Another reason urged for holding the sale void is that Mood was the natural guardian of the respondent, and stood towards him in a fiduciary relation. But suits for the partition of real property among the holders of different interests therein are not prohibited because one of such holders may stand in a fiduciary relation to another. He may not use the relationship to his advantage, but the relationship does not prohibit him from maintaining an adversary proceeding against his fiduciary. On the contrary, the right is expressly conferred by statute, and the statute conferring the right provides the procedure for protecting the rights of the fiduciary.

The partition suit in this instance was an adversary proceeding. It was instituted and conducted as such in strict conformity with the statute. Mood did not attempt to represent, nor did the court permit him to represent, the interests of the respondent in the suit. The court appointed a disinterested person to represent the minor, and entered a decree in such form as would effectually protect his rights. In such an instance, the statute should not be extended by construction to include any other relation than the one it enumerates; unless, of course, the relationship is made

a vehicle of fraud. But there is nothing of fraud in evidence in the present proceeding. All of the parties acted in the utmost good faith. We cannot think therefore that the sale should be avoided for the reason stated by the trial court.

Perhaps the discussion might end here, but we think the trial court gave too little effect to the decree entered in the suit brought by Mood against the respondent and others to quiet his title to the property. Speaking of that suit, the learned trial judge said:

"I am not impressed by the suit to quiet title. It is an attempt to cure a defect; to bolster up a weak title. If such suits were permitted to accomplish that evidently intended here, the law prohibiting guardians from dealing in the property of their wards might well be abrogated."

It is our opinion that this is a too narrow view of the nature and effect of the proceeding. Suits to quiet title are expressly sanctioned by the statute, and a resort to such a suit is a common practice where two or more persons are asserting adverse titles to a single tract of real property. The remedy is speedy and efficacious, since it permits all of the controversies concerning the property to be heard and determined in one proceeding. There is nothing in the nature of the suit, therefore, which should cause it to be looked upon with suspicion. Since it has the sanction of the statute and the approval of the courts, judgments and decrees entered therein should be regarded with the same sanctity that decrees of courts of competent jurisdiction are looked upon generally.

In this instance, we see no reason to question the validity of the decree. The trial court had jurisdiction of the subject-matter of the action. The respondent was properly served with process. A guardian *ad litem* was appointed to represent him and protect his

interests, and the trial followed the usual course. The respondent, although then a minor, had his day in court, and it is difficult to see why the decree entered in the cause is not binding upon him.

The trial court in the present suit has concluded that the partition sale was void, and refuses to recognize the decree quieting title because it, in effect, validates a void transaction. But, clearly, this mistakes the issue in the suit to quiet title. The controversy there, as here, was whether the sale under the partition suit was, or was not, valid. The judge in that action had the same right and power to determine the validity of the sale as does the judge in the present action. Since it was a decree entered by a court of competent jurisdiction, having jurisdiction over the subject-matter of the controversy and over the parties, its decree entered therein should be treated as a finality.

Our conclusions require a different decree than that entered by the trial court. Its decree is therefore reversed, and the cause is remanded with instructions to enter a decree in favor of the appellants in accordance with the prayer of their answer to the respondent's complaint.

MILLARD, MAIN, BEALS, and MITCHELL, JJ., concur.