JESSE MOOD *et al., Respondents,* v. WILLIAM S. MOOD, *Defendant,* THE NATIONAL SURETY COMPANY *et al., Appellants.*[1]

[1]Reported in 18 P. (2d) 21.

*Hamblen & Gilbert* and *C. A. Orndorff*, for appellants.

*C. T. McDonald* and *G. E. Lovell*, for respondents.

BEALS, J.—Jesse Mood instituted this action against his father, William S. Mood, and against the sureties upon bonds filed by the father as guardian of the estate of Jesse Mood, a minor. C. T. McDonald is joint plaintiff herein with Jesse Mood, but in this opinion the latter will be referred to as though he were sole plaintiff.

Plaintiff, as an heir of his mother, inherited an undivided one-eighth interest in a Whitman county farm. Defendant William S. Mood, the owner of a community one-half interest in the land, instituted an action in partition, which resulted in an order of court directing that the farm be sold. At the sale held pursuant to this order, December 27, 1915, the father became the purchaser, paying for plaintiff's interest the sum of $4,775.02.

William S. Mood was, by the superior court, appointed general guardian of the estate of his minor son, and February 21, 1916, filed a bond executed by defendant National Surety Company. Later in the proceeding, an additional bond was required by the court, and one executed by United States Fidelity & Guaranty Company was approved May 9, 1921.

Plaintiff reached the age of twenty-one years August 28, 1928, and a year later he brought suit against his guardian and the sureties above named, seeking to recover judgment on account of certain moneys belonging to him, which he alleged his father had appropriated, no accounting, however, having been had

in the guardianship proceeding. In this action, the defendant sureties appeared, but thereafter the cause was, on plaintiff's motion, dismissed without prejudice. Plaintiff then instituted an action in the superior court for Whitman county, in which he sought to recover his one-eighth interest in the farm land above referred to. The action was, on appeal to this court, determined adversely to plaintiff's contention. *Mood v. Mader,* 162 Wash. 83, 298 Pac. 329.

Plaintiff then appeared in the guardianship proceeding, which had been pending before the superior court for Whitman county, and required his father to account as his guardian, the guardianship proceeding being thereafter terminated by an order signed December 18, 1931, in which it was adjudged that defendant William S. Mood was indebted to plaintiff on account of moneys belonging to plaintiff and by the guardian converted to his own use. Plaintiff instituted this action March 2, 1932. From a judgment in favor of plaintiff, the defendant surety companies have appealed.

This action was tried to the court sitting without a jury, having been, by agreement, submitted upon the testimony taken at the hearing in the guardianship proceeding.

Appellants rely upon three propositions for reversal of the judgment: First, that this action is barred by the statute of limitations; second, that the guardian had misappropriated the funds of his ward before the bonds in question became effective and that the sureties are therefore not liable for the guardian's wrongdoing; and third, that plaintiff and his father were guilty of collusion and conspiracy in seeking to place the loss upon appellant surety companies, and had secretly agreed between themselves that de-

fendant William S. Mood would be released from all liability.

The trial court found that, when respondent became of age in August, 1928, he knew that his father had appropriated almost five thousand dollars of respondent's money, and that this action was not commenced until March 2, 1932 (the date of the filing of the complaint), more than three years after respondent reached the age of twenty-one years.

Appellants contend that this action is governed by Rem. Rev. Stat., § 159, subd. 3, which section specifies the classes of actions barred within three years, subd. 3 thereof providing that an action "upon a contract or liability, express or implied, which is not in writing and does not arise out of any written instrument," is barred unless commenced within the three year period. The trial court held that this action was not barred, being governed by Rem. Rev. Stat., § 1450, which reads as follows:

"All actions against sureties shall be commenced within six years after the revocation or surrender of letters of administration or death of the principal."

The provisions of the probate code relative to bonds given by executors and administrators are applicable to guardian's bonds by virtue of Rem. Rev. Stat., § 1574.

Section 1450, *supra*, was first enacted in 1854 as part of the territorial probate code, and appears as § 42 of the act (Laws of 1854, p. 274), reading as follows:

"All suits against securities shall be commenced within six years after the revocation or surrender of letters of administration, or death of the principal."

Appellants argue that the section of the statute above quoted is, in its application, limited to the fol-

lowing cases: The resignation of an administrator, his removal by the court, or his death. In support of their argument, they call attention to the fact that the sections of the act above referred to, immediately preceding the section in question, refer to the three situations mentioned, and that the section itself also refers specifically thereto.

Respondent relies upon the first portion of the section, "all actions against sureties," and argues that these words are not limited by the subsequent portion of the section.

The territorial legislature, at its first session, passed "an act respecting executors, administrators, and the distribution of real and personal estate," which is found commencing on page 266, Laws of 1854, § 42 of this act being above quoted. Of the sections immediately preceding the section in question, §§ 36, 37 and 38 refer to the resignation of an executor or administrator; §§ 39 and 40 refer to the issuance of letters of administration as to the goods remaining unadministered, in case of the death or resignation of an executor or the revocation of his letters, and the accounting necessary in such a case; and § 41 reads as follows:

"The succeeding administrator, or remaining executor or administrator may proceed at law against any delinquent, former executor or administrator or his legal representatives, or the securities of either, or against any other person possessed of any ·part of the estate." Laws of 1854, p. 273.

The matter of the accounting by an executor or administrator in the ordinary course of probate is covered in a subsequent portion of the act, entirely disconnected from that portion now under discussion.

Section 41, *supra,* confers a substantive right of action in favor of the "succeeding administrator," etc.,

against the former officer or his legal representatives or his "securities." Section 42, here relied upon by respondent, does not purport to confer any substantive right of action at all, but is simply a statute of limitation.

The final accounting by an executor and his application for a discharge from his trust upon complete accomplishment thereof cannot be held to be the equivalent of a surrender of his letters testamentary within the purview of § 42, *supra,* and the other sections immediately preceding it. It is evident that the legislature used the word "surrender" in connection with the word "resign" and in the sense that surrender signified the consummation of the resignation after acceptance thereof by the court. It is, of course, clear that the discharge of an executor upon completion of his trust does not fall within either of the other situations referred to in the sections above mentioned.

We are convinced that, considering the act of 1854 by itself, § 42 thereof refers only to the three instances therein mentioned, and did not apply to the situation presented upon the rendition of a final account filed by an executor upon completion of his trust. In reaching this conclusion, we have disregarded the index or synopsis of the first portion of the act, as set forth on pages 266-267 of the Laws of 1854, § 42 being indexed as "limitation of action against securities in such cases." If this be part of the act itself, as enacted by the legislature, it might well be held to indicate the legislative intent to limit the scope of the section, but, the original enrolled bills not being available, and it being probable that the index was prepared by the codifier, we disregard the same.

Sections 41 and 42 of the act of 1854 were substantially reenacted in the Code of 1881, §§ 1430, 1431.

By chapter 155, Laws of 1891, p. 385, § 21, the section in question was amended to read as follows:

"All actions against sureties shall be commenced within six years after the revocation or surrender of letters of administration or death of the principal."

Sections 79 and 80, chapter 156, Laws of 1917, p. 642, the "probate code," read as follows:

"Sec. 79. The succeeding administrator, or remaining executor or administrator, may proceed by law against any delinquent former executor or administrator, or his personal representatives, or the sureties of either, or against any other person possessed of any part of the estate." Rem. Rev. Stat., § 1449.

"Sec. 80. All actions against sureties shall be commenced within six years after the revocation or surrender of letters of administration or death of the principal." Rem. Rev. Stat., § 1450.

The sections immediately preceding § 79 refer to the removal, resignation or death of an executor, and follow the same general sequence as does the portion of the act of 1854, above referred to. Study of the history of the particular legislation in question, and the setting in which the same is contained, convinces us that § 80 of the probate code of 1917 merely fixes the period of limitation as to the actions, the substantive right to maintain which is granted by the preceding section, and does not apply to such an action as this, which is controlled by another statute of limitation.

In *Dickman v. Strobach*, 26 Wash. 558, 67 Pac. 224, this court held that a bond given by a guardian operates merely as collateral security for the proper discharge of the duties imposed upon the guardian by statute, and that an action for breach of such duty is not based upon the bond as a writing, and is therefore not governed by the six year statute of limitation referring to actions on written instruments, but is governed by the three-year statute limiting the commenc-

ment of actions "upon a contract or liability, express or implied, which is not in writing and does not arise out of any written instruments." The opinion in the case cited does not refer to the statute which is now Rem. Rev. Stat., § 1450, above quoted, and it would appear that this section was not called to the attention of the court in connection with the questions determined. The case cited, therefore, is not an authority upon the applicability of the section of the statute relied upon by respondent to the situation here presented.

In the case last cited, this court followed its earlier opinion in the case of *Spokane County v. Prescott,* 19 Wash. 418, 53 Pac. 661, 67 Am. St. 733. This was an action against a delinquent county treasurer and the surety upon his official bond. In the course of its opinion, this court said:

"Manifestly, in conformity to well-recognized legal principles, no action can be maintained against the sureties unless the liability of the principal exists at the time of the commencement of the action."

Respondent concedes that this is the law, and that such a bond as is here presented is collateral to the agreement of the obligor, and that, as long as an obligation can be enforced against the obligor, the surety is liable, but that he is liable for no longer period. No statute of limitation is called to our attention which would extend the liability of the guardian over a greater period than three years, and we are satisfied that, as to the guardian, that is the statutory limitation.

The rights of action conferred by Rem. Rev. Stat., § 1449, *supra,* are in favor of an administrator or similar officer only, that section not establishing any right of action in favor of an heir or person similarly situated, as is respondent herein.

Respondent argues that, as a legislative proposition, there should be the same period of liability for an

administrator *de bonis non* and a general administrator, and for their sureties. This is doubtless true, but that is a legislative, not a judicial, problem, and courts cannot place a false construction upon a statute because to do so would make a better rule of law.

In the next place, respondent contends that, if Rem. Rev. Stat., § 1450, be held inapplicable, this proceeding is governed by Rem. Rev. Stat., § 158, which reads as follows:

"No action for the recovery of any real estate ·sold by an executor or administrator under the laws of this state, or the laws of the territory of Washington, shall be maintained by an heir or other person claiming under the deceased, unless it is commenced within five years next after the sale, and no action for any estate sold by a guardian shall be maintained by the ward, or by any person claiming under him, unless commenced within five years next after the termination of the guardianship, except that minors and other persons under legal disability to sue at the time when the right of action first accrued may commence such action at any time within three years after the removal of the disability."

A somewhat similar limitation was contained in the probate code of 1854 (Laws of 1854, p. 290), § 137 thereof providing that no action for the recovery of any estate sold by any executor should be maintained by any heir unless commenced within three years next after the sale; the following section extending the period in cases of minors or others laboring under any legal disability to three years from the removal of the disability. In the probate code as enacted in 1854, this section is included among the sections referring to sales of property by executors.

By its plain language, the section now under discussion refers to the recovery of "real estate" or "estate." Nothing is said therein about any action

against an executor or a guardian, and we are clearly of the opinion that the limitation provided in this section is in the nature of a confirmation of title, and that it applies only to actions for the recovery of property sold. This is made clearer when the section is considered in its setting as part of the act passed by the first state legislature, Laws 1889-90, page 81. The title to the act reads as follows:

"An Act limiting the time within which an action may be brought for the recovery of real estate sold by executors, administrators or guardians, and determining when such sales shall be validated."

Under this title, it may well be that the scope of the act must be limited to actions for the recovery of real estate, but, as we conclude that, in any event, this action does not come within the purview of the statute, that phase of the situation need not be considered.

Section 158, *supra,* was considered by this court in the cases of *Larrabee Co. v. Mayhew,* 135 Wash. 214, 237 Pac. 308, and *Bradley v. Mayhew,* 146 Wash. 421, 263 Pac. 741, and respondent argues that, in these cases, this court construed the section as applying to an action against a guardian and his sureties. It is clear that, in the case first cited, the action (set up by way of cross-complaint) was one to recover real property sold. In the second action, the plaintiff sought relief both by way of the recovery of real estate in specie and against the guardian and her sureties for the value of trust personalty, wrongfully converted by the guardian. In the later case, it was held that, as to one of the parties plaintiff, the action was barred, irrespective of whether the three or the five year limitation applied, and that, as to the other plaintiff, the action was seasonably commenced, no matter which statute should be held applicable. Curiously enough,

an examination of the record indicates that this statement in the opinion is incorrect, and that the action was instituted more than three years from the date the plaintiff reached the age of majority. The opinion, however, is authority only for the proposition stated therein, and does not directly hold that § 158, *supra,* applied to such a situation as was there presented.

Such a case as this, an action against a guardian to recover judgment against him and his sureties because of the wrongful conversion by the guardian of funds belonging to the trust estate, is not within the purview of § 158, *supra,* that statute being in its application limited to actions for the recovery of the property sold.

█ As we are satisfied that this action is controlled by the paragraph of Rem. Rev. Stat., § 159, above referred to, it becomes necessary to determine when the statute commenced to run. Respondent argues that one in the situation of respondent herein has two remedies—one for the fraud perpetrated upon him by his guardian, which he can maintain upon reaching his majority, or before that time if knowledge of the fraud be brought home to him; the other one upon the order settling the final account, which order adjudicates the matter between him and his guardian and settles the amount for which the latter must account. Rem. Rev. Stat., § 161, subd. 2, reads as follows:

"An action by an heir, legatee, creditor, or other party interested, against an executor or administrator, for alleged misfeasance, malfeasance or mismanagement of the estate within one year from the time of final settlement, or the time such alleged misconduct was discovered."

Respondent, assuming that the section does not apply to the case at bar, argues from it that it indicates a legislative policy to establish the final judicial settle-

ment between the parties as the period from which the limitation commences to run. In this connection, respondent cites the case of *People v. Seelye*, 146 Ill. 189, 32 N. E. 458. It is evident that, under the statutes of Illinois, the action was on the bond, which is not the situation under the law of this state. This court, in the case of *Wickham v. Sprague*, 18 Wash. 466, 51 Pac. 1055, laid down the rule controlling here, saying:

"After a ward becomes of age he stands in the relation of a creditor to his guardian, and if he fails to bring suit within the time limited by statute the suit is barred."

It must be remembered that the trial court found, and the finding is amply supported by the evidence, that respondent, when he reached his majority, thoroughly understood the situation and knew of his father's indebtedness to him.

In the case of *Bradley v. Mayhew, supra,* it seems to have been assumed that the period of limitation commenced to run from the date the heir reached the age of majority. In *In re Montgomery's Estate,* 140 Wash. 51, 248 Pac. 64, it was held that the minor could institute suit immediately upon learning of the misappropriation of the trust funds. This, of course, does not limit the general rule to the effect that the statute of limitations does not run against a minor until he reaches his majority, but it indicates that the right of action arises upon the perpetration of the wrong.

This court, in the case of *Bennett v. Thorne,* 36 Wash. 253, 78 Pac. 936, 68 L. R. A. 113, used the following language:

"Again, it has been many times held—and this is another important reason why the action should be held to be barred—that it is not the policy of the law to put it within the power of a party to toll the statute of limitations. And this court has at least twice held

that the failure of a party to take the necessary steps to perfect his right of action, although such steps were conditions precedent to the right, would not prolong the statute. *Spokane County v. Prescott, supra; Spinning v. Pierce County,* 20 Wash. 126, 54 Pac. 1006.''

This doctrine also finds support in the opinion of this court in the case of *Brooks v. Trustee Co.,* 76 Wash. 589, 136 Pac. 1152, 50 L. R. A. (N. S.) 594.

Under the statutes and the prior decisions of this court, it must be held that this action, having been commenced more than three years after respondent reached his majority, is barred by the statute of limitations.

The judgment appealed from is reversed, with instructions to dismiss the action.

TOLMAN, C. J., MAIN, and STEINERT, JJ., concur.

### ON REHEARING.

[*En Banc.* June 6, 1933.]

PER CURIAM.—Upon a rehearing *En Banc,* a majority of the court adheres to the Departmental opinion heretofore filed herein.