[No. 25290. *En Banc.* November 12, 1935.]

LEA G. HODGE, *Appellant,* v. P. B. TRUAX, *Respondent.*[1]

*Haight & Haight,* for appellant.

*Bausman, Oldham, Cohen & Jarvis,* for respondent.

[1]Reported in 51 P. (2d) 357.

MAIN, J.—This action was brought to recover the balance claimed to be due upon a written contract. The defendant denied liability and affirmatively pleaded that the contract sued upon had been pledged to the Seattle National Bank and its successors, called liquidating trustees. In the reply, it was alleged affirmatively that the statute of limitations had run against most of the notes as security for which the contract was pledged. The trial was to the court without a jury, and resulted in findings of fact from which it was concluded that no recovery could be had upon the contract. From the judgment dismissing the action, the plaintiff appeals.

The facts are not in serious dispute and may be stated as follows: September 22, 1919, J. T. Hodge, A. L. Aabling, and the respondent, P. B. Truax, entered into the contract here involved. The terms of the agreement, so far as here material, may be summarized as follows: Hodge was then engaged in extensive financial undertakings as an importer and exporter, real estate operator and cannery man. The agreement contemplated the leasing and improvement of three lots at the corner of Fourth avenue and Pine street, in the city of Seattle. Hodge agreed to advance all the money necessary to carry out the enterprise. Truax and Aabling each agreed to be responsible for one-third of the money so advanced. They were to reimburse Hodge in accordance with a schedule of payments set out in the agreement, extending over a period from 1921 to 1935, inclusive. Hodge put up $199,200, and Truax and Aabling each became obligated to reimburse him in the sum of $66,400, without interest.

Subsequently, and on December 12, 1919, a supplementary contract was entered into by the same parties, but this is not material so far as the present case is concerned.

In June, 1921, Hodge was indebted to the Seattle National Bank in approximately the sum of $157,000. The bank, as security for this indebtedness, held a note secured by a mortgage made to Hodge, in the sum of $205,000, which note and mortgage had been assigned by him as collateral security for his indebtedness to the bank. Hodge desired the bank to surrender this note and mortgage and to substitute as security for his indebtedness the Hodge, Truax and Aabling contract. To this, the bank assented. Thereupon, and on June 28, 1921, Hodge executed the following assignment:

"In consideration of One ($1.00) Dollar and other valuable considerations, receipt of which is hereby acknowledged, I hereby sell, assign, transfer and set over to the Seattle National Bank, all of my right, title and interest in and to all payments to me from A. L. Aabling and P. B. Truax under an agreement between them and the undersigned dated the 22nd day of September, 1919.

"This assignment is intended as collateral security to any sums now owing or that may hereafter be owing by J. T. Hodge to the Seattle National Bank.

"It is understood that upon payment of all obligations of J. T. Hodge to Seattle National Bank any payments remaining due under the above mentioned agreement between J. T. Hodge, A. L. Aabling and P. B. Truax shall be reassigned to J. T. Hodge.
Above affirmed                          J. T. HODGE
    Seattle Natl. Bank
    by P. B. Truax, V. P."

This assignment, the contract of September 22, 1919, and the written modification thereof, were delivered to the bank. Truax made the payments in conformity with the contract which became due in 1921 to 1928, both years inclusive.

J. T. Hodge died March 7, 1929. The appellant, Mrs. Hodge, is his widow and his sole legatee. The bank

filed no claim against the estate of Hodge. The indebtedness of Hodge to the bank had been reduced from time to time, so that, at the date of his death, this indebtedness amounted to $42,248.72. The indebtedness was evidenced by six promissory notes, the first of which had been made March 21, 1923.

In the summer of 1921, before any payments had been made by either Aabling or Truax on the contract above mentioned, which was held by the bank as collateral security, Hodge, with the consent of the bank, settled Aabling's obligation by accepting from him Aabling's note for the sum of ten thousand dollars, bearing interest, and the conveyance of a piece of real estate. This note and the real estate were, with the consent of the bank, by Hodge substituted for the obligation of Aabling under the contract. By this settlement, Hodge released the executory contract of Aabling to pay $66,400 by receiving for the benefit of the bank Aabling's interest-bearing note mentioned and the real estate which was subsequently liquidated for $3,500.

In April, 1923, Hodge sought to secure liquidation of the agreement in so far as Truax was concerned, offering at that time to accept $32,000 (which was probably about one-half of the then face value), in full satisfaction of Truax's obligation, which was to be paid on Hodge's indebtedness to the bank. But this was not consummated.

In December, 1929, after Hodge's death, the bank and Truax arrived at a settlement of the Hodge collateral without notifying the appellant, Mrs. Hodge. The bank accepted twenty thousand dollars in cash from Truax, which was applied on the Hodge indebtedness, and released Truax from obligations on his collateral undertaking. At this time, the Hodge obligation to the bank was, as stated, $42,248.72, and the

total amount to accrue in annual installments on the Truax obligation was $35,856. The settlement so made was agreed upon between Truax and the liquidating trustees of the bank as a fair cash valuation of the collateral at the time. The Hodge indebtedness to the bank was at all times in excess of the full face of the Truax contract.

In November, 1929, the Seattle National Bank was merged with other banks in the city of Seattle. Certain assets were not included in the merger, among them the indebtedness of Hodge to the bank. Such assets as were not included in the merger were transferred to the Seattle National Company as liquidating trustee. Up until the date of the merger, Truax was vice-president of the Seattle National Bank. At the time of the settlement, he was a good financial risk for the amount involved in the contract.

The twenty thousand dollars paid by Truax was in full settlement of the balance which he owed thereon. It will be admitted that the appellant, not being a party to the settlement, was not bound thereby. The appellant, in her final report in the estate of her deceased husband, stated, in effect, that neither she nor the estate had any equity in the contract, and she settled the inheritance tax upon this basis. Subsequently, the present action was instituted for the purpose of recovering the balance due from Truax upon the contract after allowing a credit for the twenty thousand dollars paid.

The general question presented is whether the appellant can recover upon the pledged agreement. This depends ultimately upon whether she has a right to take advantage of the fact that the statute of limitations had run against most of the notes for the payment of which the contract was pledged. It is said, however, that the transaction by which the contract

was deposited by the bank was not a pledge, but was merely an assignment of the payments to become due thereunder, and this created only a lien upon such payments.

■ Referring to the assignment as above set out, it is stated therein that the signer, Hodge, hereby sells, assigns, transfers and sets over to the Seattle National Bank all of his right, title and interest in and to all payments to him from Aabling and Truax under the September 22nd agreement of 1919, and that the assignment "is intended as collateral security" to any sums now owing or that may hereafter be owing by Hodge to the bank. In conclusion, the assignment recites that it is understood that, upon payment of all obligations of Hodge to the Seattle National Bank, any payments remaining due under the agreement "shall be reassigned to J. T. Hodge."

One of the prime requisites of a pledge is that the pledgor has parted with his property and that the pledgee has possession or control over it. *Hastings v. Lincoln Trust Co.*, 115 Wash. 492, 197 Pac. 627, 18 A. L. R. 583; *Qualley v. Snoqualmie Valley Bank,* 136 Wash. 42, 238 Pac. 915. In this case, as already indicated, the assignment and the two contracts had been delivered to the bank, and at no time prior to the bringing of this action had they been surrendered either to Hodge during his lifetime or to his widow and executrix of his estate after his death.

The assignment recites that it was intended as "collateral security." The term "collateral security" refers to personal property and, in common understanding of the term, to a chose in action. A transaction by which collateral security is delivered by a debtor and accepted by the creditor constitutes a pledge.

In *Central National Bank v. Latham & Co.*, 22 S. W. (2d) (Tex. Civ. App.) 765, it was said:

"The term 'collateral security' refers to personal property exclusively, and in common parlance, to choses in action. The transaction by which collateral security is delivered by the debtor and accepted by the creditor constitutes a pledge. [Citing authorities.]"

There can be no question but that, when the assignment and the two contracts were delivered to the bank, it was a pledge.

Cases where an assignment has been made of the amount to become due upon a contract or an open account, but without delivering the evidence of the indebtedness to the creditor, are not applicable to the present situation.

The transaction having been one of pledge, it is a general rule that the pledgor cannot maintain an action on the collateral while the condition of its delivery (in this case the payment of the notes) was not performed, and the pledgee of the collateral, where the condition has not been performed, is the party in interest to maintain an action thereon. *Winnemucca State Bank & Trust Co. v. Corbeil,* 42 Nev. 378, 178 Pac. 23; *Aab v. French,* 279 S. W. (Mo. App.) 435; *American Forest Co. v. Hall,* 279 Mo. 643, 216 S. W. 740.

A pledgee has the right to retain the property pledged until the debt is fully satisfied or has been otherwise discharged. *Stusser v. Gottstein,* 178 Wash. 360, 35 P. (2d) 5. Had not the statute of limitations run against most of the obligations evidenced by the notes, there would be no question but that the appellant could not maintain this action, because the amount due upon the notes was greater than the balance due upon the contract which was pledged to secure them.

We now come to the question of what effect, if any, the running of the statute of limitations against the note has upon the right to maintain the action. Ex-

cept where otherwise provided by express statute, it is the rule that a creditor may hold and realize on collaterals pledged to secure a debt, although the action on the principal obligation is barred by limitation. And it is likewise the rule that the pledgor cannot recover possession of the pledged property without paying his debt, although the debt is barred by the statute of limitations.

In 37 C. J. 701, it is said:

"In one state by force of express statute the lien of a pledge is extinguished by operation of the statute of limitations upon the debt for which the pledge is security. Elsewhere, it is a general rule that a creditor may hold and realize on collaterals pledged to secure a debt, although action on the principal obligation is barred by limitation. And it is universally held that a pledgor cannot recover possession of the pledged property without paying his debt, although the debt is barred by the statute of limitations."

In Jones on Collateral Securities (3d ed.), § 582, it is said:

"On the other hand a debtor cannot by reason of his debt becoming barred by the statute recover back the security pledged. Nothing short of payment or tender of the debt will discharge the lien and entitle the debtor to its return. The statute of limitations does not extinguish the debt but only the remedy to enforce it."

The rule stated in the two texts just mentioned is stated substantially to the same effect by other texts, and is supported by the adjudicated cases many of which are assembled in the case of *Weems v. Carter,* 30 F. (2d) 202. It thus follows that the appellant, even though the statute of limitations had run against the notes or most of them, could not recover the security, and it necessarily follows that, if she could not recover the security, she cannot maintain an action upon it while it is in possession of the pledgee or its successor.

It may be doubted, in this case, whether the action could be maintained in any event without making the Seattle National Company a party to the action. We have assumed, however, though it does not clearly appear from the record, that, when the twenty thousand dollars was paid, the notes and the collateral security were delivered to the respondent. If this be the fact, so far as this litigation is concerned, he stands in exactly the same position as the Seattle National Bank or the Seattle National Company, and the appellant is in the same position as her husband would have been had he lived and brought the action against the bank or the national company.

The appellant says, however, that, the statute of limitations having run against the notes so far as the pledgee was concerned, it also ran against the collateral which was pledged as security. In this connection is invoked the rule in this state, well-recognized, that, where the statute of limitations has run against a note which is secured by a mortgage, a right of action on the mortgage is also barred. The reason for that rule is that the mortgage was merely incidental to the note. Other states which have a similar rule with reference to a note and mortgage do not apply that rule in the case of a pledge. *Pollock's Adm'r v. Smith,* 107 Ky. 509, 54 S. W. 740; *Russell v. People's National Bank,* 2 S. W. (2d) (Tex. Civ. App.) 961; *Central National Bank v. Latham & Co.,* 22 S. W. (2d) (Tex. Civ. App.) 765; *Mercer National Bank of Harrodsburg v. White's Ex'r,* 236 Ky. 128, 32 S. W. (2d) 734.

There is a wide difference between a pledge as collateral security and a note secured by a mortgage, in so far as the effect of the operation of the statute of limitations is concerned. In the case of the note and mortgage, as already pointed out, the mortgage

is merely incidental. They are created at the same time. They arise out of the same transaction. Consequently, when the action is barred on the note, it necessarily follows that the mortgage is also barred. With reference to a pledgee, the situation is different. The contract or obligation delivered as a pledge does not arise out of the same transaction as the debt which it was pledged to secure. In this case, Hodge was indebted to the bank on certain notes. Truax was indebted to Hodge upon the contract, which is an entirely different and independent transaction.

There is another well-settled principle of law which sustains the judgment in this case. A mortgagor or his successor in interest cannot quiet his title as against a mortgagee without paying or offering to pay the mortgage debt, even though the debt is barred by the statute of limitations. 5 R. C. L. p. 664; *Provident Mutual Building-Loan Ass'n v. Schwertner,* 15 Ariz. 517, 140 Pac. 495; *Pettit v. Louis,* 88 Neb. 496, 129 N. W. 1005, 34 L. R. A. (N. S.) 356. That rule is applicable where the mortgage upon real estate creates merely a lien, as in this state.

In California, the mortgage operates as a lien upon property, and the rule stated has been there applied. In 17 California Jurisprudence, p. 712, it is said:

"Under the settled rule in California a mortgage operates upon the property only as a lien or charge."

In *Faxon v. All Persons,* 166 Cal. 707, 137 Pac. 919, L. R. A. 1916B, 1209, it is said:

"As is said in an earlier part of this opinion, it is the settled rule that notwithstanding the lien of a mortgage is extinguished by the barring of the debt by limitation, the mortgagor cannot, without paying his debt, quiet his title against the mortgagee. [Citing authorities.]"

The same principle must be applicable in the case of a pledge where the statute of limitations has run against the obligation secured by the pledge. Applying the principle to this case, the appellant, as successor in interest to her husband, would have no right to the possession of the contract pledged, even though the statute of limitations had run against the notes which it was pledged to secure, without paying or offering to pay the notes. If she has no right to the possession of the contract, it naturally follows, as already indicated, that she could not maintain an action thereon.

The judgment will be affirmed.

MILLARD, C. J., TOLMAN, HOLCOMB, BEALS, and GERAGHTY, JJ., concur.

BLAKE, J. (dissenting)—The majority say:

"The general question presented is whether the appellant can recover upon the pledged agreement. This depends ultimately upon whether she has a right to take advantage of the fact that the statute of limitations had run against most of the notes for the payment of which the contract was pledged."

At the time of Hodge's death, the bank held his notes in the face amount of $42,248.72, to secure which Hodge had pledged the Truax contract. At that time, there was a balance due and to become due under that contract of $35,400. That contract became the property of plaintiff under the decree of distribution entered in the administration of the J. T. Hodge estate. In December of 1929, the bank and Truax, without consulting Mrs. Hodge, entered into an agreement whereby the bank undertook to release Truax of his obligations under the contract, upon payment by the latter of twenty thousand dollars.

Now, it is elementary that a pledgee, in the absence of specific authority, has no right to compromise with

persons liable on pledged collateral for less than the amount of their obligation. 49 C. J. 952. Respondent seeks to escape the consequences of the rule under the exception that a pledgor cannot complain of a compromise or settlement which is clearly advantageous to him. The argument is that the settlement was advantageous to the plaintiff (the owner of the pledged instrument), since the amount due the bank on Hodge's notes exceeded the amount owing by Truax under the contract. This argument, however, fails to take into account the fact that the statute of limitations had run against all of the Hodge indebtedness, except $5,867.57.

Now, this court has long been committed to the rule that, when the statute of limitations has run against the principal obligation, recovery against the security cannot be had. *Spokane County v. Prescott,* 19 Wash. 418, 53 Pac. 661, 67 Am. St. 733; *Dickman v. Strobach,* 26 Wash. 558, 67 Pac. 224; *George v. Butler,* 26 Wash. 456, 67 Pac. 263, 90 Am. St. 756, 57 L. R. A. 396; *Johnson Service Co. v. Aetna Indemnity Co.,* 46 Wash. 434, 90 Pac. 590; *Pratt v. Pratt,* 121 Wash. 298, 209 Pac. 535, 28 A. L. R. 548; *Mood v. Mood,* 171 Wash. 210, 18 P. (2d) 21, 23 P. (2d) 1118. While the foreclosure of collateral of the character of that in the instant case was not sought in any of those cases, they are indistinguishable in principle. See *King v. Rodgers,* 108 Kan. 311, 195 Pac. 598.

The reason for the rule is obvious, and is just as applicable to an indebtedness secured by the pledge of personal property as it is to an indebtedness secured by real estate mortgage. For, if the rule were otherwise, the statute of limitations would become a dead letter in all cases where the security exceeds the amount of the indebtedness.

With this rule in mind, let us see what the situation would be had the bank undertaken, by due process of law, to foreclose on the pledged contract. It would have brought suit on the Hodge notes in the face amount of $42,248.72. Mrs. Hodge would have interposed the defense of the statute of limitations. The bank would have recovered judgment in the sum of $5,867.57. The court would have ordered the security sold to satisfy the judgment. Assuming the bidding was brisk, Mr. Truax might have bought his contract in for twenty thousand dollars. Out of this, the bank would have satisfied its judgment for $5,867.57, and, of necessity, turned the balance (in the neighborhood of fourteen thousand dollars) over to plaintiff.

As the result of a compromise which they had no right to make, the bank has recovered fourteen thousand dollars which it could not have recovered under any legal process, and Truax has escaped payment of $15,400, which would become due under his contract with Hodge.

To my mind, the assumption that the bank could have "sat tight" and collected on the Truax contract as payments became due, notwithstanding the statute of limitations had run against most of the Hodge notes, is fallacious for several reasons. In the first place, the bank did not do that. Had it done so, an entirely different issue would have arisen. Instead of "sitting tight," however, it assumed an aggressive position and sought to circumvent the defense of the statute of limitations. In making the compromise, it has, to its own advantage and to plaintiff's detriment, deprived her of that defense to Hodge's notes. Under any definition, this conduct constituted a wrong, in contemplation of law. For the plaintiff was deprived of a legal right—a right of which the supreme court of the United States has said:

"Statutes of limitation are vital to the welfare of society and are favored in the law. They are found and approved in all systems of enlightened jurisprudence. They promote repose by giving security and stability to human affairs. An important public policy lies at their foundation. They stimulate to activity and punish negligence. While time is constantly destroying the evidence of rights, they supply its place by a presumption which renders proof unnecessary." *Wood v. Carpenter,* 101 U. S. 135.

In the second place, even when acting under a power to sell, a pledgee of personal property "is bound to exercise the utmost good faith." *Dodge v. Scripps,* 179 Wash. 308, 37 P. (2d) 896. "The sale must be fair, and the contract must be construed benignantly for the debtor's interest as well as that of the pledgee." *Foote v. Utah Commercial & Savings Bank,* 17 Utah 283, 54 Pac. 104. In making the compromise and so circumventing Mrs. Hodge's right to the defense of the statute of limitations, neither the bank nor Truax exercised "the utmost good faith" toward her.

Finally, Truax is not entitled to credit on his contract in excess of twenty thousand dollars. For, by the clear weight of authority, an obligor under pledged collateral, who settles with the pledgee for less than the face of his obligation, is still liable to the pledgor for the balance. 21 R. C. L. 696; Jones on Collateral Securities (3d ed.), § 716; *Zimpleman v. Veeder,* 98 Ill. 613; *Vaughn v. Central State Bank,* 27 S. W. (2d) (Tex. Civ. App.) 1112; *Parmley v. Aynesworth,* 37 S. W. (2d) (Tex. Civ. App.) 836; *De Clark v. Waters,* 10 Wyo. 31, 65 Pac. 855. In the case last cited, the court states the rule as follows:

"Ordinarily the pledgee of a promissory note as collateral security is not permitted to compromise with the maker and accept less in its discharge or satisfaction than the face value of the paper. There

may be instances where such a settlement will be upheld, as where by reason of the fact that the debt is insufficiently secured and the maker is insolvent, a compromise is advantageous to all parties; but, according to all the authorities, it will be sustained only in extreme cases. (Coleb on Col. Sec. 96; Jones on Pledges, 716; Wood v. Matthews, 73 Mo. 479; Garlick v. James, 12 Johns. 146; Depuy v. Clark, 12 Ind. 427; Union Trust Co. v. Rigdon, 93 Ill. 471; Zimpleman v. Veeder, 98 Ill. 613.) *Where notes held as collateral are surrendered to the maker by the pledgee at a sum considerably less than their face value the pledgor has his election to bring an action against the pledgee in tort for wrongfully disposing of the collateral, or against the maker to recover the residue of the face of the notes so surrendered.*" (Italics mine.)

There are certainly no equities in this case to cause the court to hesitate to apply this rule against Truax. To apply it, would compel him to pay only that which he agreed to pay. Failure to apply it, permits him to escape his obligation to the extent of $15,400.

MITCHELL, J., concurs with BLAKE, J.

STEINERT, J. (concurring with the majority)—I concur in the prevailing opinion. There is, however, one fact omitted therein which should be added. The omission of that fact possibly permits an inference to be drawn, and which appears in the dissenting opinion, to the effect that Mrs. Hodge has, in some way, been defrauded through the circumventive acts of the bank and Truax.

It must be borne in mind, and it is admitted, that the indebtedness to the bank upon the notes of Hodge at the time of the latter's death was $42,248.72. What should be added to the statement of the case is this: When the bank made its settlement with Truax upon the basis of twenty thousand dollars cash, it was upon the understanding and agreement that the Hodge

notes, held by the bank, should receive credit thereon in the full sum of the unpaid balance owing on the Truax contract with Hodge, namely $35,856, although at that time that amount had not yet fully accrued. In other words, the indebtedness from Hodge to the bank was to be reduced as of the date of the settlement, in the full amount that could ever be recovered from Truax by Hodge. With the allowance of that credit, there was still owing to the bank on the Hodge indebtedness the sum of $7,392.72.

When the case is viewed in its true light, it is apparent that Mr. Hodge, or his representative, has not been defrauded out of fifteen thousand dollars, or any other sum, as the dissenting opinion infers. What Mrs. Hodge has been, and will be, prevented from doing is using the statute of limitations as a sword of offense rather than as a shield of defense. She cannot institute or maintain an affirmative action against the bank or against its assignee, Truax, for the recovery of the collateral security, upon the contention or theory that the indebtedness secured thereby *has been paid.* Were the bank or Truax the aggressive actor in a suit by it or him against her upon the notes, the statute would be a defense. The law upon that point is not in doubt. No less in doubt is the law that the debtor may not invoke the statute of limitations in an action brought by him or her to recover collateral security or to satisfy the lien of a mortgage, so long as the debt secured thereby has not been paid.

If Hodge, or his representative, has been defrauded in this instance, then every debtor who seeks recovery of his collateral security is defrauded, if the same is not surrendered to him, on demand, at the expiration of the statute of limitations affecting the principal

indebtedness. But refusal to surrender the security in such a case is not fraud. It is a right protected in law.