229 P.3d 866 (2010)
Nancy E. KRUEGER, Appellant,
v.
Jack W. TIPPETT and Blanche M. Tippett, husband and wife, Respondents.
No. 27791-7-III.
Court of Appeals of Washington, Division 3.
March 18, 2010.
*867 David Allan Gittins, Attorney at Law, Clarkston, WA, for Appellant.
Thomas L. Ledgerwood, Attorney at Law, Clarkston, WA, for Respondents.
KORSMO, J.
¶ 1 This is a dispute over the proceeds of a life insurance policy between the assignee and the named beneficiary. We agree with the trial court, although on different grounds, that the assignee is entitled to the proceeds. We affirm the judgment.

FACTS
¶ 2 Hal and Bonnie Krueger borrowed money from Jack and Blanche Tippett several times beginning in 1976. The loans were secured by real estate owned by the Kruegers. Hal Krueger also assigned "all rights, title and interest" in the proceeds of a $50,000 insurance policy on his life as "collateral security." Clerk's Papers (CP) 24; Exhibit A. The assignment required Mr. Krueger to continue paying the premiums on the policy until the principal and interest owed the Tippetts was paid, but permitted him to change the beneficiary.[1] Exhibit A. The assignment was "expressly limited to such of the proceeds under the Policy as may be necessary to liquidate said indebtedness, the *868 remainder of the proceeds being unaffected hereby." Id.
¶ 3 The Kruegers filed for bankruptcy in 1981. In 1985, the bankruptcy trustee entered into an agreement with the Tippetts. The agreement abandoned the bankruptcy estate's interest in the life insurance policy and some other Krueger assets. The Tippetts were allowed to proceed against the policy and those assets in state court.
¶ 4 The Tippetts obtained a judgment against the Kruegers in the amount of $43,186.54. They foreclosed on the Kruegers' home. Hal Krueger signed a document on April 15, 1986, that reaffirmed his 1976 assignment of the life insurance policy to the Tippetts. The reassignment stated that it was in consideration of the Tippetts releasing their judgment lien against the property. In conjunction with the reassignment to the Tippetts, Mr. Krueger also assigned the insurance policy to G.W. Krueger in order to secure a promissory note.[2] This assignment noted that it was subordinate to the assignment to Tippetts.
¶ 5 On May 13, 1986, the Tippetts filed a partial satisfaction of their judgment. The partial satisfaction released the judgment lien and acknowledged payment of nearly $30,000. Due to interest and attorney fees, the Kruegers still owed $21,257.15. The judgment provided that interest on that sum would accrue at 12 percent. The partial satisfaction made no mention of the insurance policy.
¶ 6 The Tippetts maintained correspondence with the insurance company thereafter to assure that they were still listed as beneficiaries of the policy. The insurance company also verified that policy premiums were being paid by a disability benefit.
¶ 7 Bonnie Krueger died in 1994. Hal Krueger later remarried, and in 2005 named his new wife, Nancy Krueger, as beneficiary of the life insurance policy. He died October 9, 2007. Six days later, the Tippetts wrote the insurance company asking for the proceeds, claiming they were owed a total of $75,992.28 after 21 years of interest. Nancy Krueger claimed the proceeds as the named beneficiary. The insurer was allowed to deposit the proceeds of the policy, which totaled $52,413.70, into the registry of the court.
¶ 8 Nancy Krueger filed a declaratory judgment action seeking to claim the proceeds, have Hal Krueger's debt declared unenforceable, and the assignment extinguished. Both parties moved for summary judgment, with the Tippetts asserting several theories of recovery.
¶ 9 The trial court determined that there were no facts in dispute and that it was appropriate to grant summary judgment. The court ruled that the effect of the bankruptcy trustee's decision to abandon the policy was to completely assign it to the Tippetts; Ms. Krueger was estopped from arguing otherwise. The court ordered the entire proceeds paid to the Tippetts.
¶ 10 Ms. Krueger timely appealed to this court.

ANALYSIS
¶ 11 Ms. Krueger argues persuasively that the trial court erred in concluding that the bankruptcy trustee's actions extinguished her late husband's interest in the policy. Nonetheless, we agree that the 1976 assignment, and the reaffirmation in 1986, entitled the Tippetts to the proceeds of the policy to the extent that the judgment remained unsatisfied.
¶ 12 Bankruptcy Trustee's Actions. A bankruptcy trustee is required to marshal assets of the bankruptcy debtor and use them to pay creditors. All property which the debtor owns or may have an interest in becomes part of the bankruptcy estate, including property in the possession of others. 11 U.S.C. § 541(a); 11 U.S.C. § 542(a). The trustee can "abandon" assets that are "burdensome" or of "inconsequential value" to the estate. 11 U.S.C. § 554(a).
¶ 13 The parties here argue over the meaning of abandonment. Ms. Krueger contends *869 that abandonment simply means that the property is no longer part of the bankruptcy estate; the debtor is not relieved of any interest he may have in the property. The Tippetts assert that the abandonment was a transfer from the trustee to them.
¶ 14 The decision in In re Renaissance Stone Works, L.L.C., 373 B.R. 817 (Bankr.E.D.Mich.2007) is instructive. There a bankruptcy trustee attempted to abandon estate property to a creditor. The bankruptcy judge disagreed and determined that a trustee could only abandon property back to the debtor from whom the estate had received the property. There was no authority permitting the trustee to abandon property to a creditor. Id. at 820-821.[3] The Ninth Circuit similarly has noted that the effect of a trustee's abandonment of property is that "title reverts to the bankrupt, nunc pro tunc." Mason v. C.I.R., 646 F.2d 1309, 1310 (9th Cir.1980). The United States Supreme Court has long agreed with that approach. Brown v. O'Keefe, 300 U.S. 598, 602-603, 57 S.Ct. 543, 81 L.Ed. 827 (1937).
¶ 15 We conclude that the trustee's agreement with the Tippetts in this case to abandon the property was not a transfer of that property to them. The agreement itself recognized that the Tippetts would have to invoke state court remedies in order to collect on the property, something that would not be necessary if the Tippetts truly owned the assets. Such action would be ultra vires under the reasoning of Renaissance Stone Works.
¶ 16 The trustee determined that the Tippetts had a security interest in the policy that prevented it from being a useful asset to the estate. Hence, the trustee abandoned it pursuant to 11 U.S.C. § 554(a). To the extent that the trial court found that the Tippetts had an interest in the policy by operation of the bankruptcy trustee's actions, we disagree.
¶ 17 1986 Assignment. The 1986 assignment, like the 1976 assignment before it, gave "all rights, title, and interest" in the policy to the Tippetts, subject to four reservations. Ms. Krueger argues that the assignment is not self-executing and lapsed when the period for enforcing the judgment expired. We disagree.
¶ 18 Nothing in the assignment suggests that it was subject to future legal procedures before the Tippetts could receive the proceeds. Instead, the usual course of a life insurance policy was expected to play out. Once Mr. Krueger died, the Tippetts would receive the proceeds from the policy to the extent that the outstanding judgment remained unpaid. There was nothing more the Tippetts needed to do before collecting on the policy except await the death of Mr. Krueger.
¶ 19 The timing of the assignment also defeats Ms. Krueger's argument. The 1986 assignment was made after the new 1986 judgment entered. At that point, Mr. Krueger "paid" the Tippetts by again assigning the policy to them. He also made a cash payment that led the Tippetts to remove the judgment lien and stop foreclosure proceedings. While the date on which the policy proceeds would be paid to the Tippetts was unknown, as was the final amount that would have to be paid, the method of payment was clear. The policy proceeds were assigned to the Tippetts. They needed to do nothing more in order to collect under the assignment.
¶ 20 This case is not a situation where the Tippetts failed to act before the period for enforcing the judgment expired. They received the assignment well within the ten year enforcement period. No further actions were required; the policy proceeds were theirs.
¶ 21 Extent of Remedy. The expiration of the judgment enforcement period in 1996 does present issues about the amount of recovery the Tippetts may receive. Their recovery under the assignment is "expressly limited to such of the proceeds under the Policy as may be necessary to liquidate said indebtedness, the remainder of the proceeds being unaffected hereby." Exhibit A. This presents questions about whether the judgment *870 is still valid, despite being unenforceable, and, if so, whether interest continued to accrue after the enforcement period.
¶ 22 RCW 4.56.190 creates a lien of judgment that exists for ten years after entry of the judgment. The judgment can be extended for one additional ten year period. RCW 6.17.020(3).[4] After the expiration of the original or extended ten year period, the lien "shall cease to be a lien or charge against the estate or person of the judgment debtor." RCW 4.56.210. That lien may be extended no further.[5]Id.
¶ 23 While the statutory lien exists, the lien holder "may have an execution, garnishment, or other legal process issued for the collection or enforcement of the judgment at any time." RCW 6.17.020(1). The effect of this statute is that judgment liens cease and statutory enforcement mechanisms may not be utilized once the ten (or twenty) year period for enforcing the judgment has expired.
¶ 24 The Washington Supreme Court has consistently described this enforcement statute as a "nonclaim statute." Bellevue Sch. Dist. No. 405 v. Brazier Constr., Co., 103 Wash.2d 111, 117, 691 P.2d 178 (1984). In an oft-cited passage, the court once explained:
There are two types of statutes which the courts had to apply. One of them is the statute which either by its plain terms or by the construction given it by the court makes the limitation of time inhere in the right or obligation rather than the remedy. It is sometimes referred to as a statute of nonclaim, and, strictly speaking, is not a statute of limitations at all. In its usual form the statute creates some right or obligation and a time is fixed within which the right must be asserted or the obligation sought to be enforced, or the same will be barred. When the limitation period expires, the right or obligation is extinguished and cannot be revived by a subsequent statute enlarging the time limitation. Illustrations of nonclaim statutes in this state are those providing for liens of laborers and materialmen, claims against estates of deceased persons, and claims for damages against municipal corporations.
....
The other type of statute is one which relates only to the remedy and has nothing to do with any right or obligation, does not inhere in either, and is wholly independent of them. It is a statute of limitations in its strict sense, and, although a remedy may become barred thereunder, the right or obligation is not extinguished. It is a statute of repose.
Lane v. Dep't of Labor & Indus., 21 Wash.2d 420, 425-426, 151 P.2d 440 (1944).
¶ 25 Seizing upon this analysis, Ms. Krueger argues that the ability to enforce the judgment is barred and, hence, she reasons, the judgment itself no longer exists and the Tippetts can take nothing under the assignment. Her argument is partially correct, but fails to distinguish between a judgment lien and a judgment. We think that there is a material difference under the unique facts of this case.
¶ 26 Our courts have consistently recognized that a judgment lien, once expired, cannot be revived. Am. Disc. Corp. v. Shepherd, 160 Wash.2d 93, 99, 156 P.3d 858 (2007); Hutton v. State, 25 Wash.2d 402, 406-407, 171 P.2d 248 (1946); Lane, 21 Wash.2d at 425, 151 P.2d 440. There is no question that the Tippetts could no longer enforce the 1986 judgment at the time Mr. Krueger died in 2007. Id.; RCW 4.56.210(1); RCW 6.17.020(7). However, that does not mean that the judgment itself ceased to exist.
¶ 27 A judgment and a lien are two separate entities. As defined in the leading law dictionary, a judgment is:
1. A court's final determination of the rights and obligations of the parties in a case. The term judgment includes an equitable *871 decree and any order from which an appeal lies.
BLACK'S LAW DICTIONARY 918 (9th ed. 2009).
¶ 28 In contrast, a lien is defined as:
A legal right or interest that a creditor has in another's property, lasting usu. until a debt or duty that it secures is satisfied. Typically, the creditor does not take possession of the property on which the lien has been obtained. Cf. pledge (3).
BLACK'S LAW DICTIONARY 1006 (9th ed. 2009).
¶ 29 The distinction between a judgment and the judgment lien also is long recognized in this state. "A statute creating a lien right for a definite length of time only, is something that is in addition to the cause of action or substantive right in question and is not a statute of limitations because it does not exist outside of the period of time during which it is conferred." Hutton, 25 Wash.2d at 407, 171 P.2d 248. The recognition that a lien as a limited creature of statute was distinct from the underlying judgment for purposes of time limits is important to this action.
¶ 30 Washington's statutory framework for enforcing judgments focuses on the judgment lien. Entry of judgment creates a lien. When that lien expires, there is no longer any statutory method of enforcing the judgment, and nothing can be done to revive the lien. Am. Disc., 160 Wash.2d at 99, 156 P.3d 858. The statutes, however, address the judgment lien rather than the underlying judgment itself. The parties have not provided, and we have not found, any authority that the judgment itself ceases to exist when it becomes unenforceable.[6]
¶ 31 That point is critical here. While the 1986 judgment was no longer enforceable, its continued existence was still important since it served as the measure of the value of the assignment. The Tippetts thus were entitled to collect on the policy.
¶ 32 The remaining question is exactly what the value of the judgment was. Since the judgment itself still existed, 12 percent interest continued to accrue since 1986. The Tippetts contended in the trial court that the value of the judgment at the time of the 2007 claim totaled nearly $76,000. We agree that the value of the judgment easily exceeded the $52, 413.70 paid to the registry of the court. The trial court correctly awarded the entire proceeds to the Tippetts.
¶ 33 The 1986 judgment, while unenforceable, was still valid and served to establish the value of the assignment of the insurance proceeds. The judgment awarding the entire proceeds to the Tippetts is affirmed.
WE CONCUR: KULIK, C.J., and SWEENEY, J.
NOTES
[1] The assignment also allowed Mr. Krueger to collect disability and hospital benefits under the policy, elect modes of settlement, and to collect dividends. Exhibit A.
[2] G.W. Krueger is not a party to this action and the record contains no other information about this second assignment.
[3] This result is consistent with 11 U.S.C. § 554(c), which abandons scheduled estate property back to the debtor if the trustee does not otherwise dispose of it.
[4] Special rules exist for child support judgments and restitution or costs in a criminal case. RCW 6.17.020(2), (4).
[5] Similarly, RCW 6.17.020(7) states in part that "no judgment is enforceable for a period exceeding twenty years from the date of entry in the originating court."
[6] In the analogous area of pledges, Washington recognizes that a creditor may "realize on collaterals pledged to secure a debt, although the action on the principal obligation is barred by limitation." Hodge v. Truax, 184 Wash. 360, 367, 51 P.2d 357 (1935); accord, Keltch, Inc. v. Don Hoyt, Inc., 4 Wash.App. 580, 585, 483 P.2d 135 (1971).