237 P.3d 338 (2010)
SHERRON ASSOCIATES LOAN FUND V (MARS HOTEL) LLC, a Washington limited liability company, Appellant,
v.
Robert B. SAUCIER, Respondent,
Julie E. Saucier, and the marital community comprised thereof; Billy R. Anders, individually; Alan Wiseman and Nancy Wiseman; Eleanor M. Adams; Robert S. Adams; James Birch and Barbara Birch; Lonald L. Bridge; Rosemary Joy Cummings; Donald C. Eckberg; Robert Gadd and Leona-Mary Gadd; Robert Hayes; George C. Hodgeweide; Lillian J. Hopkins; Robert E. Jensen and Ruth W. Jensen; Paul L. McLain; Wesley D. *339 Schierman; Lyle G. Trotter; Curtis F. White and Lorraine C. White; Robert H. Ytreeide; Carole J. Ytreeide; Robert O. Nelson, Washington State Department of Labor and Industries; Washington State Department of Employment Security; Washington State Department of Revenue; and City of Spokane, Defendants.
No. 28238-4-III.
Court of Appeals of Washington, Division 3.
August 5, 2010.
Kevin Arnold Bay, Ryan Swanson & Cleveland PLLC, Seattle, WA, for Appellant.
Charles Matthew Andersen, Winston & Cashatt, Kevin H. Breck, Winston Cashatt, Lawyers, Spokane, WA, for Respondent.
KORSMO, A.C.J.
¶ 1 What happens when a limited liability company (LLC) is canceled without having first disposed of its assets? Analogizing to common law partnership and corporation practices, we hold that the assets devolve to the owners of the LLC. We reverse the trial court and reinstate the order extending the judgment against respondent Robert Saucier.

FACTS
¶ 2 This litigation is one of many lawsuits that arose from the failure of a hotel in downtown Spokane. In 1997, Mr. Saucier borrowed $825,000 from Sherron Associates Loan Fund V (Loan Fund V), a limited liability company. The money was used to invest in the Mars Hotel. Mr. Saucier never made any payments on the loan and the hotel went bankrupt. It later was destroyed in a spectacular and mysterious fire. Loan Fund V *340 obtained a judgment against Saucier (and others) in 1998.
¶ 3 Sherron Associates, Inc. (SAI) formed Loan Fund V in April 1997 in order to invest in the Mars Hotel. SAI was the initial managing member of the company. CES Properties, Inc. (CES), served as managing member from December 31, 1997 to December 21, 2001. In December 2001, the members of Loan Fund V transferred their interests to GCA Investments, Inc. (GCA). GCA became manager of Loan Fund V as well as the only member.
¶ 4 Despite no longer managing Loan Fund V, CES filed a certificate of cancellation for that entity with the Secretary of State on May 14, 2002. GCA did not know about the certificate of cancellation and did not act to wind up Loan Fund V's affairs.
¶ 5 In the meantime, Mr. Saucier developed a popular table game for the gambling industry and became very successful. He now lives in Nevada. GCA transferred Loan Fund V's assets, including the judgment against Mr. Saucier, to SAI on October 31, 2002. SAI then began efforts in Nevada and Washington courts to enforce the judgment against Mr. Saucier. In the course of those actions it learned about the cancellation of Loan Fund V.[1]
¶ 6 SAI convinced the King County Superior Court to add itself as a real party in interest to the Spokane judgment. On appeal, Division One of this court reversed, finding that the civil rules could not be used to add a party after judgment. Sherron Assocs. Loan Fund v. v. Galaxy Gaming Corp., noted at 140 Wash.App. 1013, 2007 WL 2358592 (2007). The court noted, but did not decide, the issues relating to the ownership of Loan Fund V's assets, including the Spokane judgment. Id.
¶ 7 SAI then filed the current action in the Spokane County Superior Court seeking to extend the 1998 judgment for an additional 10 years. In support of the motion, SAI filed an "Acknowledgement of Assignment of Judgment" signed by the former president of GCA. A commissioner granted the ex parte motion. Ten months later, Saucier moved under CR 60(b) to vacate the extension on several grounds. One argument presented was the claim that the Loan Fund V assets could not have been assigned to GCA because the LLC had been canceled before the assignment.
¶ 8 A superior court judge agreed with that argument and concluded that the extension was invalid. The order extending the judgment was vacated. SAI moved for reconsideration, arguing that GCA succeeded to the assets of Loan Fund V upon the cancellation. The trial court found that issue was of "only academic interest" and denied reconsideration. SAI then timely appealed to this court.

ANALYSIS
¶ 9 The question presented here is one left unanswered by Washington's limited liability company act, chapter 25.15 RCW. The parties vigorously dispute whether the issue involves the LLC statute or simply the standard of review of an order entered pursuant to CR 60(b).
¶ 10 A trial court's decision on a motion to vacate a judgment is reviewed for abuse of discretion. Haller v. Wallis, 89 Wash.2d 539, 543, 573 P.2d 1302 (1978). Discretion is abused if it is exercised on untenable grounds or for untenable reasons. State ex rel. Carroll v. Junker, 79 Wash.2d 12, 26, 482 P.2d 775 (1971). A court acts on untenable grounds when its factual findings are not supported by the record; it acts for untenable reasons if it uses an incorrect standard of law or the facts do not meet the requirements of the standard of law. State v. Rundquist, 79 Wash.App. 786, 793, 905 P.2d 922 (1995), review denied, 129 Wash.2d 1003, 914 P.2d 66 (1996).
¶ 11 Washington's LLC statute was first enacted in 1994. RCW 25.15.900. Experience has shown that there are several problems with the act, many of which arise from the lack of specificity in the legislation. Indeed, the Washington State Bar Association has been working on a comprehensive rewrite *341 of the statute much of the past decade. See House Bill Report SB 6531 (Feb. 28, 2006) at p. 3; House Bill Report SHB 2657, at p. 4. Often described as a combination of partnership and corporate business forms, the LLC is a creature of statute. Chadwick Farms Owners Ass'n v. FHC, LLC, 166 Wash.2d 178, 186-187, 207 P.3d 1251 (2009).
¶ 12 An LLC is created by the filing of a certificate of formation. RCW 25.15.070. Until the time of oral argument in this case, there were two statutory provisions applicable to LLCs that were in the process of ending their existence. The first involved dissolution of the LLC as provided for by RCW 25.15.270 et seq. The statutes specified who could dissolve LLCs and described the process of winding up the LLC. See RCW 25.15.270, .275, .280, .285, .290, .295,.300. The second process involved the cancellation of the LLC's certificate of formation. RCW 25.15.080.[2]
¶ 13 The cancellation provision was at issue in Chadwick Farms. The consolidated cases involved in that litigation involved actions brought against and on behalf of LLCs that had been canceled. Chadwick Farms, 166 Wash.2d at 182-185, 207 P.3d 1251. The court distinguished between the dissolution and cancellation processes, and specifically noted that RCW 25.15.070(2)(c) provided that the existence of the LLC continued only until the issuance of the certificate of cancellation. Id. at 187-188, 207 P.3d 1251. Giving effect to both processes, the court concluded that a canceled LLC could neither be sued nor maintain a lawsuit. Id. at 189-192, 199, 207 P.3d 1251. A dissolved, but not yet canceled, LLC could sue and be sued within the time limits of the statute. Id. at 194, 207 P.3d 1251.
¶ 14 The decision in Chadwick Farms informed the trial court's ruling in this action. The trial court correctly recognized that Loan Fund V was canceled May 14, 2002, and could not take further actions, such as transferring assets, after that time. That does not mean, however, that its assets also were canceled when the LLC ceased to exist.
¶ 15 In focusing on GCA's inability to transfer the Loan Fund V assets after cancellation, the trial court essentially treated the asset (judgment) as not existing independent of its owner. We disagree. A judgment is an intangible asset. It exists until vacated; its existence is not dependent upon its enforceability. Krueger v. Tippett, 155 Wash.App. 216, 225-226, 229 P.3d 866 (2010). We likewise do not believe that the judgment ceased to exist merely because its owner could no longer act as an LLC.
¶ 16 When a corporation ceases to exist, ownership of its assets passes to the shareholders once the creditors have been paid. Ban-Mac, Inc. v. King County, 69 Wash.2d 49, 50, 416 P.2d 694 (1966); Cohen v. L. & G. Inv. Co., 186 Wash. 308, 310-311, 57 P.2d 1042 (1936). A similar rule applies to partnerships. In the absence of a governing statute, partnership assets are owned by the partners once the creditors have been satisfied. Horne v. Aune, 130 Wash.App. 183, 192-194, 121 P.3d 1227 (2005), review denied, 157 Wash.2d 1015, 139 P.3d 350 (2006). We believe the rule for limited liability companies, a hybrid of partnerships and corporations, should be the same. In the absence of a governing statute, title to LLC-owned property passes to the owner of the canceled LLC subject to creditor claims.
¶ 17 Mr. Saucier argues that there is a governing statute, pointing out RCW 25.15.245(1), which states in part: "A member has no interest in specific limited liability company property." We do not agree that provision is applicable to a canceled LLC. It merely states a general rule governing an on-going LLC. Somewhat closer to being on point is RCW 25.15.300(1)(c), which requires assets to be distributed during dissolution in proportion to a member's distribution shares unless an agreement provides otherwise.
¶ 18 Neither of these provisions, nor any other, involves nondistributed assets. The original 1994 legislation appears to have anticipated that an LLC would go through the dissolution process and wind up its affairs by paying liabilities and distributing assets prior *342 to cancelling its certificate of formation.[3] However, Loan Fund V did not go through that process. There is no statute addressing a canceled LLC that was not first dissolved. Accordingly, the rule governing undistributed partnership and corporate assets also should apply to LLCs.
¶ 19 Just as the assets and liabilities of a natural person pass to his or her estate upon death, we believe the assets and liabilities of a dead LLC pass to its owners. We find no authority that suggests assets die with the LLC. If the asset in question in this case had been the hotel rather than a judgment, we doubt that anyone would believe the hotel had become unowned merely because of the death of its owner.
¶ 20 At the time Loan Fund V was canceled, GCA was the sole member of the LLC. Therefore, the assets of Loan Fund V passed to GCA. GCA, in turn, could transfer those assets to SAI. SAI therefore was either "the assignee or current holder" of the judgment at the time it sought to extend it. RCW 6.17.020(3). The commissioner properly granted SAI's motion to extend the judgment. The trial court erred in vacating that ruling.
¶ 21 Reversed.
¶ WE CONCUR: SWEENEY and BROWN, JJ.
NOTES
[1] SAI attempted to have Loan Fund V reinstated, but the Secretary of State declined on the basis that there was no authority permitting a canceled LLC to be reinstated. Clerk's Papers 64.
[2] RCW 25.15.080 was repealed by LAWS OF 2010, ch. 196, effective June 10, 2010. The new legislation also deleted all references to certificates of cancellation throughout chapter 25.15 RCW.
[3] See House Bill Report SB 6531 (Feb. 28, 2006) at p. 2; Senate Bill Report SHB 2657 (Feb. 18, 2010) at p. 3.